Opinion by Judge REINHARDT; Dissent by Judge CALLAHAN.
OPINION
REINHARDT, Circuit Judge:
Petitioner James Garcia Dimaya seeks review of the Board of Immigration Appeals’ (BIA) determination that a conviction for burglary under California Penal Code Section 459 is categorically a “crime of violence” as defined by 8 U.S.C. § 1101(a)(43)(F), a determination which rendered petitioner removable for having been convicted of an aggravated felony. During the pendency of petitioner’s appeal, the United States Supreme Court decided Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), which held that the Armed Career Criminal Act’s (“ACCA”) so-called “residual clause” definitioii of a “violent felony” is unconstitutionally vague. In this case, we consider whether language similar to ACCA’s residual clause that is incorporated into § 1101(a)(43)(F)’s definition of a crime of violence is also void for vagueness. We hold that it suffers from the same indeterminacy as ACCA’s residual clause and, accordingly, grant the petition for review.
I
Petitioner, a native and citizen of the Philippines, was admitted to the United States in 1992 as a lawful permanent resident. In both 2007 and 2009, petitioner was convicted of first-degree residential burglary under California Penal Code section 459 and sentenced each time to two years in prison. If a non-citizen is convicted of an aggravated felony, he is subject to removal. 8 U.S.C. § 1227(a)(2)(A)(iii). Citing petitioner’s two first-degree burglary convictions, the Department of Homeland Security (“DHS”) charged that petitioner was removable because he had been convicted of a “crime of violence ... for which the term of imprisonment [was] at least one year”- — an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).[1] That stat *1112 ute defines a “crime of violence” by reference to 18 U.S.C. § 16, which provides the following definition:
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
The Immigration Judge (IJ) agreed with DHS that first-degree burglary in California is a crime of violence. Citing § 16(b) and United States v. Becker, 919 F.2d 568, 573 (9th Cir.1990), the IJ explained that “unlawful entry into a residence is by its very nature an offense where is apt to be violence [sic], whether in the efforts of the felon to escape or in the efforts of the occupant to resist the felon.” Because the charging documents for each conviction alleged an unlawful entry, and because the term of. imprisonment for each conviction was greater than one year, the IJ determined that these convictions were crimes of violence. On the basis of 'this conclusion, the IJ held that petitioner was removable and ineligible for any relief. The BIA dismissed petitioner’s appeal on the same ground. Citing § 16(b) and Becker, the BIA concluded that “[ejntering a dwelling with intent to commit a felony is an offense that by its nature carries a substantial risk of the use of force,” and therefore affirmed the IJ’s holding that petitioner was convicted of a crime of violence.[2]
Petitioner filed a timely petition with this Court for review of the BIA’s decision. After the parties argued this case, the United States Supreme Court decided Johnson and, because the definition of a crime of violence that the BIA relied on in this case is similar to the unconstitutional language in ACCA’s residual clause,[3] we ordered supplemental briefing and held a supplemental oral argument regarding whether § 16(b), as incorporated into the INA, is also unconstitutionally vague. We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review questions of law, including whether language in the immigration statutes is void for vagueness. See Alphonsus v. Holder, 705 F.3d 1031, 1036-37 (9th Cir.2013). That question, as a pure question of law, receives de novo review from this Court. Aguilar-Ramos v. Holder, 594 F.3d 701, 704 (9th Cir.2010).
1
II
The Fifth Amendment’s Due Process Clause “requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Alphonsus, 705 F.3d at 1042 (quoting Ko *1113 lender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). Although most often invoked in the context of criminal statutes, the prohibition on vagueness also applies to civil statutes, including those concerning the criteria for deportation. Jordan v. De George, 341 U.S. 223, 231, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (“Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation.”); see also A.B. Small Co. v. Am. Sugar Ref. Co., 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589 (1925) (“The defendant attempts to distinguish [prior vagueness] cases because they were criminal prosecutions. But that is not an adequate distinction. The ground or principle of the decisions was not such as to be applicable only to criminal prosecutions.”).
Previously, we have recognized the vagueness doctrine’s- applicability in the context of withholding of removal “because of the harsh consequences attached to ... denial of -withholding of removal.” Alphonsus, 705 F.3d at 1042 (citing Jordan, 341 U.S. at 230-31, 71 S.Ct. 703). In this case, Petitioner challenges a statute as unconstitutionally vague in the context of denial of cancellation of removal.
For due process purposes, this context is highly analogous to denial of withholding of removal because both pose the harsh consequence of almost certain deportation. Under withholding of removal, a non-citizen who is otherwise removable cannot be deported to his home country if he establishes that his “life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1231(b)(3)(A). Under cancellation of removal, immigration authorities may cancel the removal of a lawful permanent resident who satisfies certain criteria based on length of residency, good behavior, and exceptional hardship. Id. § 1229b(b)(l). Non-citizens who commit certain criminal offenses are ineligible for these forms of relief. See id. §§ 1231(b)(3)(B)(ii), 1229b(b)(l)(C). As with denial of withholding of removal, then, denial of cancellation of removal renders an alien ineligible for relief, making deportation “a virtual certainty.” United States v. Bonilla, 637 F.3d 980, 984 (9th Cir.2011).
The government argues that our circuit’s reliance on Jordan “is misguided as Jordan did not authorize vagueness challenges to deportation statutes.” We find this suggestion baffling. Jordan considered whether the term “crime involving moral turpitude” in section 19(a) of the Immigration Act of 1917, a type of offense that allowed for a non-citizen to “be taken into custody and deported,”"was void for vagueness. 341 U.S. at 225-31, 71 S.Ct. 703 (emphasis added). In considering this challenge, the Court explicitly rejected the argument that the vagueness doctrine did not apply. Id. at 231, 71 S.Ct. 703. The government also argues that subsequent Supreme Court decisions rejected due process challenges to various immigration statutes. See Marcello v. Bonds, 349 U.S. 302, 314, 75 S.Ct. 757, 99 L.Ed. 1107 (1955); Galvan v. Press, 347 U.S. 522, 530-31, 74 S.Ct. 737, 98 L.Ed. 911 (1954); Harisiades v. Shaughnessy, 342 U.S. 580, 588-91, 72 S.Ct. 512, 96 L.Ed. 586 (1952). None of these cases, however, suggests that the Due Process Clause does not apply to deportation proceedings. Nor could they, for it “is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.” Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (internal' quotation marks omitted).
As the Supreme Court recognized in Jordan, a necessary component of a non- *1114 citizen’s right to due process of law is the prohibition on vague deportation statutes. Recently, the Supreme Court noted the need for “efficiency, fairness, and predictability in the administration of immigration law.” Mellouli v. Lynch, — U.S. -, 135 S.Ct. 1980, 1987, 192 L.Ed.2d 60 (2015). Vague immigration statutes significantly undermine these interests by impairing non-citizens’ ability to “anticipate the immigration consequences of guilty pleas in criminal court.” Id. (internal quotation marks omitted); see also Padilla v. Kentucky, 559 U.S. 356, 364, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (“[AJceurate legal advice for noncitizens accused of crimes has never been more important” because “deportation is an integral part— indeed, sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.” (footnote omitted)). For these reasons, we reaffirm that petitioner may bring a void for vagueness challenge to the definition of a “crime of violence” in the INA.[4]
Ill
To understand Johnson’s effect on this case, it is helpful to view § 16(b), as incorporated into the INA, alongside the residual clause at issue in Johnson. The INA provides for the removal of non-citizens who have been “convicted of an aggravated felony.” 8 U.S.C. § 1227(a)(2)(A)(iii). Its definition of an aggravated felony includes numerous offenses, including “a crime of violence (as defined in section 16 of Title 18 ... ).” 8 U.S.C. § 1101(a)(43)(F). The subsection of 18 U.S.C. § 16 that the BIA relied on in this case defines a crime of violence as an “offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” 18 U.S.C. § 16(b). Had Congress written out the relevant definition in full instead of relying on cross-referencing, a lawful permanent resident would be removable if “convicted of an offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense” (emphasis added). The language in ACCA that Johnson held unconstitutional is similar. The ACCA provision defined a “violent felony” as “any crime punishable by imprisonment for a term exceeding one year [i.e., a felony] ... that ... involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). Importantly, both the provision at issue here and ACCA’s residual clause are subject to the same mode of analysis. Both are subject to the categorical approach, which demands that courts “look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to pétitioner’s crime.”[5] Leo *1115 cal v. Ashcroft, 543 U.S. 1, 7, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). Specifically, courts considering both § 16(b) and the residual clause must decide what a “ ‘usual or ordinary* violation” of the statute entails and then determine how great a risk of injury that “ordinary case” presents. Rodriguez-Castellon v. Holder, 733 F.3d 847, 854 (9th Cir.2013) (quoting United States v. Ramos-Medina, 706 F.3d 932, 938 (9th Cir.2013)).
In Johnson, the Supreme Court recognized two features of ACCA’s residual clause that “conspire[d] to make it unconstitutionally vague.” 135 S.Ct. at 2557. First, the Court explained, the clause left “grave uncertainty” about “deciding what kind of conduct the ‘ordinary case’ of a crime involves.” Id. That is, the provision “denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges” because it “tie[d] the judicial assessment of risk to a judicially imagined ‘ordinary case’ of a crime, not to real-world facts or statutory elements.” Id. Second, the Court stated, ACCA’s residual clause left “uncertainty about how much risk it takes for a crime to qualify as a violent felony.” Id. at 2558. By combining these two indeterminate inquiries, the Court held, “the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.”[6] Id. On that ground it held the residual clause void for vagueness. The Court’s reasoning applies with equal force to the similar statutory language and identical mode of analysis used to define a crime of violence for purposes of the INA. The result is that because of the same combination of indeterminate inquiries, § 16(b) is subject to identical unpredictability and arbitrariness as ACCA’s residual clause. In sum, a careful analysis of the two sections, the one at issue here and the one at issue in Johnson, shows that they are subject to the same constitutional defects and that Johnson dictates that § 16(b) be held void for vagueness.
A
In Johnson, the Supreme Court condemned ACCA’s residual clause for asking judges “to imagine how the idealized ordinary case of the crime subsequently plays out.” Id. at 2557-58. To illustrate its point, the Court asked rhetorically whether the “ordinary instance” of witness tampering involved “offering a witness a bribe” or instead “threatening a witness with violence.” Id. at 2557; see also id. at 2558 (It is just as likely that “a violent encounter may- ensue” during an attempted burglary as it is that “any confrontation that occurs ... ‘consistís] of nothing more than the occupant’s yelling “Who’s there?” from his window, and the burglar’s run *1116 ning away.’ ” (quoting James v. United States, 550 U.S. 192, 211, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), and id. at 226, 127 S.Ct. 1586 (Scalia, J., dissenting))).[7]
As with ACCA’s- residual clause, the INA’s crime of violence provision requires courts to “inquire whether ‘the conduct encompassed by the elements of the offense, in the ordinary case, presents’” a substantial risk of force. Delgado-Hernandez v. Holder, 697 F.3d 1125, 1128 (9th Cir.2012) (quoting James, 550 U.S. at 208, 127 S.Ct. 1586); see also Rodriguez-Castellon, 733 F.3d at 854. We see no reason why this aspect of Johnson would not apply here, and indeed the government concedes that it does. As with the residual clause, the INA’s definition of a crime of violence at issue in this case offers “no reliable way to choose between these competing accounts” of what a crime looks like in the ordinary case. Johnson, 135 S.Ct. at 2558.
B
In many circumstances, of course, statutes require judges to apply standards that measure various degrees of risk. See Supplemental Brief for Respondent at la, Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (No. 13-7120) (cataloguing federal statutes). The vast majority of those statutes pose no vagueness problems because they “call for the application of a qualitative standard such as ‘substantial risk’ to real-world conduct.”[8] Johnson, 135 S.Ct. at 2561. The statute at issue in Johnson was not one of those statutes, however. Nor is the provision at issue here. If the uncertainty involved in describing the “ordinary case” of a crime was not enough, its combination with the uncertainty in determining the degree of risk was. ACCA’s violent felony definition requires judges to apply “an imprecise ‘serious potential risk’[9] stan *1117 dard ... to [the] judge-imagined abstraction” of a crime in the ordinary case. Id. at 2558. The same is equally true of the INA’s definition of a crime of violence at issue here. Section 16(b) gives judges no more guidance than does the ACCA provision as to what constitutes a substantial enough risk of force to satisfy the statute. Accordingly, Johnson’s holding with respect to the imprecision of the serious potential risk standard is also clearly applicable to § 16(b). As with ACCA’s residual clause, § 16(b)’s definition of a crime of violence, combines “indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as” a crime of violence.[10] 135 S.Ct. at 2558.
C
Notwithstanding the undeniable identity of the constitutional defects in the two statutory provisions, the government and dissent offer several unpersuasive arguments in an attempt to save the INA provision at issue in this case. First, the government and dissent argue that the Supreme Court found ACCA’s standard to be arbitrary in part because the residual clause “force[d] courts to interpret ‘serious potential risk’ in light of the four enumerated crimes” in the provision,[11] crimes which are “far from clear in respect to the degree of risk each poses.” Id. (quoting Begay v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (internal quotation marks omitted)). It is true that, after the Court set forth its holding in Johnson, it cited the provision’s four enumerated offenses in responding to the government’s argument that the Court’s holding would cast doubt on the many criminal statutes that include language similar to the indeterminate term “serious potential risk.” Id. at 2561. In doing so, however, it stated that while the *1118 listed offenses added to the uncertainty, the fundamental reason for the Court’s holding was the residual clausefs “application of the ‘serious potential risk’ standard to an idealized ordinary case of the crime.”[12] Id. In short, this response clearly reiterated that what distinguishes ACCA’s residual clause from many other provisions in criminal statutes was, consistent with its fundamental holding, the use of the “ordinary case” analysis. Johnson therefore made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause’s relation to the four listed offenses.[13]
Next, the government argues that ACCA’s residual clause requires courts to consider the risk that would arise after completion of the offense, see Johnson, 135 S.Ct. at 2557, and that § 16(b) applies only to violence occurring “in the course of committing the offense,” 18 U.S.C. § 16(b). First, we doubt that this phrase actually creates a distinction between the two clauses. For example, we have consistently held that California’s burglary statute (the very statute at issue in this case) is a crime of violence for the purposes of the INA precisely because of the risk that violence will ensue after the defendant has committed the acts necessary to constitute the offense. Lopez-Cardona v. Holder, 662 F.3d 1110, 1112 (9th Cir.2011) (describing the risk that a burglar “will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension” (quoting Becker, 919 F.2d at 571)).[14] By the time the risk of physical force against an occupant arises, however, the defendant has frequently already satisfied the elements of the offense of burglary under California law. See CaLPenal Code § 459 (defining burglary as “entering] any house, room, apartment, [etc.] ... with intent to commit grand or petit larceny or any felony”). More important, even if such a distinction did exist, it would not save the INA’s definition of a crime of violence from unconstitutionality. The Court, in Johnson, held ACCA’s residual clause to be unconstitutionally vague because it combined the indeterminate inquiry of “how to measure the risk posed by a crime” in the ordinary case with “indeterminacy about how much risk it takes for the crime to qualify as a violent felony.” 135 S.Ct. at 2558. This reasoning applies equally whether the in *1119 quiry considers the risk of violence posed by the commission and the aftereffects of a crime, or whether it is limited to consideration of the risk of violence posed by acts necessary to satisfy the elements of the offense.[15]
The government also argues that § 16(b) has not generated the same degree of confusion among courts that ACCA’s residual clause generated. It notes that, in contrast to the five residual clause cases that the Supreme Court has decided in addition to Johnson, the Court has decided only a single case interpreting section 16(b). See Leocal, 543 U.S. at 10-11, 125 S.Ct. 377. That the Supreme Court has decided more residual clause cases than § 16(b) cases, however, does not indicate that it believes the latter clause to be any more capable of consistent application. We can discern very little regarding the merits of an issue from the composition of the Supreme Court’s docket. The Court has
repeatedly indicated that a denial of cer-tiorari means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be heard.
Daniels v. Allen, 344 U.S. 443, 492, 73 S.Ct. 437, 97 L.Ed. 469 (1953); see also Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363, 365 n. 1, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973) (describing the “well-settled view that denial of certiorari imparts no implication or inference concerning the Court’s view of the merits”). Moreover, the Supreme Court in recent years has decided substantially more federal criminal appeals than immigration appeals. The Court’s history of deciding ACCA residual clause cases in greater .numbers than INA crime of violence cases is thus consistent with its greater interest in federal criminal cases than in immigration cases. In fact, over this period the ratio of federal criminal cases to immigration cases significantly exceeds the ratio of ACCA residual clause cases to INA crime of violence cases on which the government relies.[16]
*1120 IV
In Johnson, the Supreme Court held that ACCA’s residual clause “produces more unpredictability and arbitrariness than the Due Process Clause tolerates” by “combining indeterminacy about how to measure'the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony.” 135 S.Ct. at 2558. Although the government can point to a couple of minor distinctions between the text of the residual clause and that of the INA’s definition of a crime of violence, none undermines the applicability of Johnson’s fundamental holding to this case. As with ACCA, section 16(b) (as incorporated in 8 U.S.C. § 1101(a)(43)(F)) requires courts to 1) measure the risk by an indeterminate standard of a “judicially imagined ‘ordinary case,’” not by real world-facts or statutory elements and 2) determine by vague and uncertain standards when a risk is sufficiently substantial. Together, under Johnson, these uncertainties render the INA provision unconstitutionally vague.[17]
We GRANT the petition for review and REMAND to the BIA for further proceedings consistent with this opinion.

. DHS also charged that petitioner was removable for having committed two crimes of moral turpitude, see 8 U.S.C. § 1227(a)(2)(A)(ii), and for having committed a "theft offense ... or burglary offense for which the term of imprisonment [was] at least one year” — an aggravated felony under 8 us.C. § 1101(a)(43)(G). Although the Immigration Judge (IJ) agreed with DHS that petitioner was removable on either of these two grounds, the Board of Immigration Appeals (BIA) dismissed petitioner’s appeal on the sole ground that he was removable for having *1112 committed a crime of violence under 8 U.S.C. § 1101(a)(43)(F). Therefore, whether the relevant definition of a "crime of violence” is constitutional is the only issue we reach.

. Notwithstanding the fact that the BIA appeared to consider only the petitioner's 2007 conviction, the government argues in this case that both of petitioners first-degree burglary convictions are crimes of violence under 18 U.S.C. § 16(b). This discrepancy is immaterial, as the same analysis applies to both convictions.

. The subsection of ACCA that includes the residual clause defines a “violent felony” as "any crime punishable by imprisonment for a term exceeding one year ... that ... is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). As the Court noted in Johnson, the italicized words of this definition are known as the residual clause. 135 S.Ct. at 2555-56.

. Several other Circuit Courts of Appeals have also entertained void for vagueness challenges to immigration statutes. See Mhaidli v. Holder, 381 Fed.Appx. 521, 525-26 (6th Cir.2010) (unpublished); Arriaga v. Mukasey, 521 F.3d 219, 222 (2d Cir.2008); Garcia-Meza v. Mukasey, 516 F.3d 535, 536 (7th Cir.2008).

. Although it is largely irrelevant for the purposes of this case, the dissent’s characterization of the categorical approach is incorrect. The dissent correctly explains that categorical approach cases such as Descamps v. United States, - U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), and Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) hold that a state conviction must include all elements of the equivalent federal generic offense to qualify as a violent felony. The dissent then goes on to assert, incorrectly, that those cases, which deal with ACCA, shed light on how to interpret § 16(a). Taylor, Shepard, and Descamps tell us nothing about § 16(a), *1115 however, because they do not interpret § 924(e)(2)(B)© — the subsection of ACCA with language identical to § 16(a). Instead, those cases consider a different subsection— the list of enumerated felonies that appears in § 924(e)(2)(B)(ii), of which burglaiy is one. See Descamps, 133 S.Ct. at 2281; Shepard, 544 U.S. at 16-17, 125 S.Ct. 1254; Taylor, 495 U.S. at 581-82, 110 S.Ct. 2143. Because § 16 does not include any enumerated felonies in either subsection (a) or (b), those cases are inapplicable.

. The dissent essentially agrees with this reading except that it argues that Johnson "only prohibits uses [of § 16(b)] that leave uncertain both how to estimate the risk and amount of risk necessary to qualify as a violent crime.” Nothing in Johnson, however, suggests that the Court considered the constitutionality of ACCA’s residual clause in reference to the crime Johnson actually committed. To the contrary, the Court never discussed Johnson's predicate offense — unlawful possession of a short-barreled shotgun — but instead held in absolute terms that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution’s guarantee of due process.” Johnson, 135 S.Ct. at 2563. Johnson therefore clearly holds that the residual clause is unconstitutionally vague in all instances, not just for some subset of crimes.

. "Does the ordinary burglar invade an occupied home by night or an unoccupied home by day?” Johnson, 135 S.Ct. at 2558. It seems that one arrives at a different answer about what the "ordinary case” of burglary involves whether one uses "[glut instinct” or "statistical analysis.” Id. at 2557 (quoting United States v. Mayer, 560 F.3d 948, 952 (9th Cir.2009) (Kozinski, C.J., dissenting from denial of rehearing en banc)). Although many people surely imagine the possibility of a violent encounter when they picture burglary, recent government statistics show that only about seven percent of burglaries nationwide involved incidents of violence. Bureau of Justice Statistics, National Crime Victimization Survey: Victimization During Household Burglaries 1 (Sept. 2010), http://www.bjs.gov/ contenf/pub/pdFvdhb.pdf. Such statistics only highlight the arbitrary nature of this inquiry, even in the seemingly easy case of burglary.

. The dissent argues that any "person intent on committing a burglary inherently contemplates the risk of using force should his nefarious scheme be detected” and then asks "Is this not what the Supreme Court was referring to when it noted 'we do not doubt the constitutionality of laws that call for application of a qualitative standard such as "substantial risk” to real-world conduct?’ ” Dissent at 1126 (quoting Johnson, 135 S.Ct. at 2561). Plainly not. As the dissent’s use of the word "inherently” proves, the dissent’s argument does not rest on the facts of an ■ actual burglary but instead on the dissent’s conception of burglary in the ordinary case. A statute that allowed courts to evaluate the record to determine whether a defendant actually engaged in violence would fall within the language the dissent cites. However, as the Supreme Court has repeatedly made clear, when applying the categorical approach that ACCA and § 16(b) demand, courts must consider "what offense the non-citizen was 'convicted of ... not what acts he committed.” Moncrieffe, 133 S.Ct. at 1678.

.ACCA's residual clause required courts to evaluate whether an offense posed "a serious potential risk” while the relevant INA definition asks whether an offense poses "a substantial risk.” Compare 18 U.S.C. § 924(e)(2)(B)(ii), with id. § 16(b). Measuring whether an offense poses a "substantial” risk, however, is no less arbitrary than meas *1117 uring whether it poses a "serious potential” one, and the government offers no suggestion to the contrary.

. At the supplemental oral argument, the government argued that two recent decisions from other circuit courts of appeals conflict with our holding in this case. See Ortiz v. Lynch, 796 F.3d 932 (8th Cir.2015); United States v. Fuertes, No. 13-4755, 805 F.3d 485, 2015 WL 4910113 (4th Cir. Aug. 18, 2015). Neither case, however, is of any help to the government. The Eighth Circuit noted that Ortiz "does not implicate the analysis in” Johnson because, in Ortiz, the government argued that the petitioner’s conviction qualified as a crime of violence under § 16(a), a completely different statutory definition. Ortiz, 796 F.3d at 935-36 & n. 2. Indeed § 16(a) is highly» similar to analogous language in ACCA, 18 U.S.C. § 924(e)(2)(B)(i), that Johnson left untouched. 135 S.Ct. at 2563 ("Today’s decision does not call into question ... the remainder of the Act’s definition of a violent felony.”). Fuertes is of even less help, if possible. There, the Fourth Circuit held that it did not need to reach the question whether Johnson applied to language similar to § 16(b) that appears in 18 U.S.C. § 924(c)(3)(B) because, in any case, the defendant's offense did not satisfy the statutory language in question. See Fuertes, 805 F.3d at 499-501 & 499 n. 5, 2015 WL 4910113 at *9-10 & 9 n. 5. Finally, the dissent cites In re Gieswein, No. 15-6138, 802 F.3d 1143, 2015 WL 5534388 (10th Cir. Sept. 21, 2015), in which the Tenth Circuit noted that the “definition [that survived Johnson ] of 'violent felony' under the ACCA includes a felony conviction for ‘burglary.’ ” Id. at 491 n. 2, 2015 WL 4910113 at *2 n. 2. Yes, but only because the portion of ACCA that survived includes a list of four enumerated felonies, of which burglary is one. That, after Johnson, ACCA continues to cover burglary through one of its enumerated offenses says nothing about whether § 16(b) can be constitutionally applied to burglary or any other offense.

. The relevant provision of ACCA defined a "violent felony” as any felony that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii). As noted above in footnote 3, the "residual clause” is defined as the portion of provision that follows "explosives.”

. The Solicitor General's brief in Johnson also recognized that because section 16(b), as applied in the INA, "requires a court to identify the ordinary case of the commission of the offense,” it is "equally susceptible to [Johnson's] central objection to the residual clause.” Supplemental Brief for Respondent at 22-23, Johnson v. United States, - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (No. 13-7120).

. Although Johnson concluded that the enumerated offenses added to the residual clause’s indeterminacy, it could well be argued that, if anything, § 16(b) is more vague than the residual clause because of its lack of enumerated examples. To be sure, ACCA’s enumerated examples are "far from clear in respect to the degree of risk each poses.” Johnson, 135 S.Ct. at 2558. However, they provide at least some guidance as to the sort of offenses Congress intended for the provision to cover. Section 16(b), by contrast, provide no such guidance at all.

.In holding that burglary under California law constituted a crime of violence in Lopez-Cardona, we were not asked to consider the question of § 16(b)’s constitutionality; nor did we do so. For the same reason, the dissent’s lengthy discussion of this court’s pri- or holdings regarding burglary and § 16(b) is irrelevant. Here, we do not consider what offenses fall within § 16(b) but instead whether the provision may be constitutionally applied. That latter question is answered here and, as a result, all of our prior cases relating to which offenses fall within the scope of that provision are to that extent of no further force or effect.

. The government also suggested at the supplemental oral argument that our decision in this case would require holding that Johnson overruled Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), which stated in dicta that burglary is the "classic example” of an offense that would satisfy § 16(b). Id. at 10, 125 S.Ct. 377. The dissent now adopts a related argument: that this statement from Leocal proves that "there is no unconstitutional vagueness in this case.” Dissent at 1129. In deciding whether the offense of "driving under the influence of alcohol ... and causing serious bodily injury” qualified as a crime of violence, however, Leocal said nothing about whether the statutory language in § 16(b) is void for vagueness. Moreover, Johnson casts doubt on the notion that burglary could easily be characterized as a crime that involves a substantial risk of violence under § 16(b). See 135 S.Ct. at 2557 ("The act of ... breaking and entering into someone’s home does not, in and of itself, normally cause physical injuiy.”). Finally, even if there were some "straightforward cases” or categories of cases under § l'6(b), Johnson squarely rejected the argument that "a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp,” id. at 2561-62, and clearly stated that the residual clause was void for vagueness in all applications, id. at 2563. There is therefore no need in this opinion to consider the continued validity of the statement in Leocal cited by the government and dissent.

. During the nine terms preceding the 2015 term, the Supreme Court decided a total of 85 federal criminal appeals versus only 12 immigration appeals. These statistics come from the Harvard Law Review, which compiles statistics each year after the completion of the Supreme Court term. Every version of "The Statistics” includes a table that records the number of cases decided each year by "sub *1120 ject matter.” They are available at http:// harvardlawreview.org/category/statistics/.

. Our decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)’s definition of a crime of violence.