In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3693

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DOUGLAS D. JACKSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:15-CR-6 — **Robert L. Miller, Jr.**, *Judge.*

ARGUED OCTOBER 28, 2016 — DECIDED AUGUST 4, 2017

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Douglas Jackson appeals following a jury trial at which he was convicted of three counts of transporting a minor in interstate commerce with the intent that she engage in illegal sexual activity, *see* 18 U.S.C. § 2423(a), three counts of sex trafficking of a minor, *see* 18 U.S.C. § 1591(a), and one count of possessing a firearm in furtherance

of a crime of violence (sex trafficking of a minor), *see* 18 U.S.C. § 924(c). The district court sentenced Jackson to 295 months' imprisonment. He appeals, arguing that his conviction under § 924(c) is invalid because the portion of that statute applicable to his crime is unconstitutionally vague. He also challenges the district court's conclusion under the United States Sentencing Guidelines that he was a leader or supervisor of the offense, *see* U.S.S.G. § 3B1.1(1)(c), and that he obstructed justice when he testified on his own behalf, *see* U.S.S.G. § 3C1.1. For the reasons discussed below, we vacate Jackson's conviction under § 924(c) and vacate and remand for resentencing.

## I.

Jackson met the minor victim, J.T., at a party in May of 2014, when J.T. was fifteen years old and Jackson was twenty-five. J.T., who was just finishing the 9th grade, told Jackson her actual age, but he claimed to be only seventeen. He asked her if she was interested in making some money, and then proceeded to buy her clothes and pay to have her hair and nails done.

Within several weeks, on June 6, 2014, Jackson drove the two of them in a rented car to Atlanta, Georgia, where J.T. had some family, including her father and siblings. Jackson paid for the two of them to stay for two nights in a hotel. He also used his cell phone and a prepaid credit card to post an ad in the Atlanta section of the classified advertising website "Backpage.com," which prior to January 2017 contained an adult section

advertising different categories of sex work.[1] The title of the ad said, "Sexy star beautiful mixed puerto rican in town looking for a great time." The e-mail address connected to the ad was Jackson's e-mail, and the listed contact number was for a prepaid flip phone that Jackson had purchased. Jackson and J.T. used the prepaid cell phone to text customers, who were charged $150 for thirty minutes with J.T. or $200 for an hour.

On June 8th, Jackson and J.T. moved on to Louisville, Kentucky, basically repeating what they had done in Atlanta. The Backpage.com ad from Atlanta was reposted with only minor differences, and Jackson again paid for motels and food. While in Louisville, J.T. stayed with a customer beyond the allotted time frame, and Jackson began texting her. In response to Jackson's query, "Wtf is takin so long" J.T. texted back that the customer "spent another 15 mins." The call log reflected that Jackson attempted to call J.T. on the prepaid phone approximately fifteen minutes later, after which the following text exchange took place:

> J.T.: I'm tryin to make him cum
>
> Jackson: Bitch its a time limit not that he got to go now or I'm comin in

---

[1] *See* Amicus Curiae Brief of The National Center for Missing and Exploited Children at 2–7, *J.S., S.L., & L.C. v. Village Voice Media Holdings, L.L.C.*, 184 Wash. 2d 95 (Wash. 2015) (asserting that Backpage enables and disseminates child sex trafficking content and that its ads facilitate sex with children).

J.T.: Alright

Shortly after that encounter, Jackson's cell phone was used to repost the Backpage.com ad.

After their stay in Louiville, Jackson and J.T. returned briefly to South Bend, Indiana. Next they headed to Grand Rapids, Michigan with J.T.'s brother. After reserving a hotel in Grand Rapids, Jackson reposted the original Backpage.com ad, and J.T. responded to a call shortly before midnight at a local Super 8 motel. She returned to Jackson's car shortly after going into the hotel room and reported that the customer had been acting weird. While she was sitting with Jackson in the car, two police officers conducting a routine patrol approached. One of the officers testified that they frequently patrolled that Super 8 parking lot because it was often the site of drug and prostitution activity. The officers saw J.T.'s bare leg propped up in the driver's side of the car, and as they got closer to investigate, J.T. hastily exited the vehicle with her shorts unbuttoned and her underwear exposed. Jackson also sat up and got out, reaching toward the floorboard as he did so. One of the police officers shined his flashlight onto the car's floorboard, revealing a loaded Hi-Point .380 firearm, for which Jackson had an Indiana permit.

Jackson was arrested and J.T. was taken into police custody. Under initial questioning, J.T. maintained that she was simply joyriding and hanging out with Jackson and that she had never had sex with him or anyone else for money. When faced with the prospect of going into foster care, however, she admitted that she was in Grand Rapids for prostitution.

Based on alleged criminal conduct with J.T. on June 6, 2014, June 8, 2014, and June 13–14, 2014, Jackson was charged first by complaint in December 2014 with two counts of sex trafficking of a minor, *see* 18 U.S.C. § 1591(a). Then in February 2015, Jackson was ultimately indicted on three counts of knowingly transporting a minor in interstate commerce to engage in criminal sexual activity, *see* 18 U.S.C. § 2423(a); three counts of recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining a minor in interstate commerce in order to engage in a commercial sex act, *see* 18 U.S.C. § 1591(a), and one count of possession of a firearm during a crime of violence, namely, sex trafficking, *see* 18 U.S.C. § 924(c).

At trial, both J.T. and Jackson testified, as well as several government witnesses involved in investigating the case. Contrary to her initial insistence to officers that she was not engaging in prostitution, J.T. testified at trial that prostitution was the intended purpose of the trips to Atlanta, Louisville, and Grand Rapids, and that she engaged in commercial sex acts in each city after Jackson posted the Backpage.com ads. J.T. also explained that she and Jackson split the proceeds evenly between them.

Jackson also testified, claiming that J.T. had told him when they met that she was nineteen and that he had truthfully told her that he was twenty-five. He also maintained that their trips were simply to travel and visit family and friends, and denied posting any advertisements on Backpage.com. Although he admitted knowing about the ads on Backpage.com, he claimed that J.T. posted them herself using his phone. He asserted that he assumed when she responded to the ads she was simply giving men massages or talking with them. He also denied

knowing that there were condoms in his car and insisted that he had not received any money as a result of J.T.'s responses to the Backpage.com postings.

After being confronted with the text message exchange from Louisville, Jackson conceded knowing that J.T. had engaged in a sex act that time. But he insisted that he was upset about it and believed it to be a one-time occurrence.

The jury convicted Jackson on all counts. After trial, he filed a motion under Federal Rule of Criminal Procedure 29 seeking a judgment of acquittal on the charge under 18 U.S.C. § 924(c) of using a firearm in furtherance of a crime of violence, "to wit: sex trafficking of a minor." Section 924(c)(3) defines a "crime of violence" as any felony that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "elements clause") or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause" or "risk-of-force clause"), *id.* at § 924(c)(3)(A), (B). Specifically, Jackson argued that § 924(c)(3)(B) was subject to the same deficiencies that had led the Supreme Court in *Johnson v. United States*, —U.S.—, 135 S. Ct. 2551 (2015) to invalidate as unconstitutionally vague the similarly worded "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B).

The district court denied Jackson's motion after concluding that § 924(c)(3)(B)'s definition of "crime of violence" was distinguishable in several critical respects from the ACCA residual clause. In *Johnson*, the Court considered the provision

in the ACCA mandating more severe penalties for a felon in possession of a firearm with three or more previous convictions of a "violent felony," defined in 18 U.S.C. § 924(e)(2)(B)(iii) as a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Johnson* concluded the residual clause was unconstitutionally vague first because of the "grave uncertainty" in determining the risk posed by the generic "ordinary case" of a given crime and second, because the clause itself left uncertainty about how much risk was required for a crime to qualify as a violent felony. *Johnson*, 135 S. Ct. at 2257–58. The Court also noted its own repeated failures to "craft a principled and objective standard out of the residual clause" demonstrated its "hopeless indeterminancy." *Id.* at 2258.

The district court found *Johnson's* rationale inapplicable to § 924(c)(3)(B) for several distinct reasons. First, the district court noted that the Court in *Johnson* had been particularly troubled by the list of enumerated crimes in the ACCA, which added to the confusion in assessing what risk of injury was required given the wide disparity for potential harm between crimes on the list such as arson and extortion. *See Johnson*, 135 S. Ct. at 2558, 2559, 2561. The district court reasoned that the lack of such a confusing enumerated list in § 924(c)(3)(B) made the task of assessing whether a crime carried a substantial risk that physical force would be used much less difficult.

The district court also found the language around the risk itself much narrower in § 924(c) than in the ACCA, which refers broadly to the unqualified risk of "physical injury to another" as opposed to the more specific risk in § 924(c) that

"physical force" would be used "*in the course of committing the offense*" (emphasis added)—a scope temporally limited to specific conduct by the offender at the time of the offense. *See Johnson*, 135 S. Ct. at 2259 (noting that the ACCA gives no indication of "how remote is too remote"). And unlike the ACCA's residual clause, which the Court noted had caused multiple splits in the lower federal courts and defied the Court's own "repeated attempts … to craft a principled and objective standard," *id.* at 2258, § 924(c)(3)(B) has not proven difficult for courts to consistently apply. The district court acknowledged that the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert granted*, 137 S. Ct. 31 (2016), had extended *Johnson's* rationale to the residual clause of 18 U.S.C. § 16(b), which is worded identically to § 924(c)(3)(B), but it found *Dimaya* neither binding nor persuasive. The court thus denied Jackson's motion for judgment of acquittal.

Over Jackson's objections at sentencing, the district court agreed with the recommendation in the presentence report that Jackson's offense level should be increased by two levels because he was a manager or supervisor in the offense, *see* U.S.S.G. § 3B1.1(c), and another two levels for obstructing justice because his testimony claiming ignorance of J.T.'s prostitution was false, *see* U.S.S.G. § 3C1.1. These adjustments, taken together with the sex trafficking counts, produced an advisory guideline range of 235 to 293 months' imprisonment, plus a mandatory 60-month sentence to run consecutively on the Section 924(c) count. The district court sentenced Jackson to 295 months' imprisonment, the minimum sentence under the advisory guideline range.

**II.**

On appeal, Jackson renews his contention that his conviction for possessing a firearm during a crime of violence, *see* 18 U.S.C. § 924(c)—i.e., sex trafficking of a minor, *see* 18 U.S.C. § 1591(a), must be vacated because § 924(c)(3)(B) is unconstitutionally vague. The Fifth Amendment's proscription against depriving an individual of life, liberty, or property without due process of law supplies the rationale for the void-for-vagueness doctrine. Under it, the government may not impose sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Welch v. United States*, — U.S.—, 136 S. Ct. 1257, 1262 (2016) (quoting *Johnson*, 135 S. Ct. at 2556).

In determining whether an offense is a "crime of violence" under § 924(c), we employ the categorical approach, asking whether the minimum criminal conduct necessary for conviction under the applicable statute—as opposed to the specific underlying conduct at issue—amounts to a crime of violence as defined in subsection (A) or (B). *See, e.g., Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Mathis v. United States*, —U.S.—, 136 S. Ct. 2243, 2248 (2016) (outlining categorical approach as applied to prior conviction under ACCA).

Here the government concedes that under the categorical approach, Jackson's underlying conviction for sex trafficking of a minor, *see* 18 U.S.C. § 1591(a), does not "*have as an element*" the use or attempted use of force, and therefore may not be upheld under § 924(c)(3)(A)—the elements clause. Specifically, sex trafficking of a minor may be proven without

a finding that the defendant used or threatened his victim with force—for instance by luring an individual into sex trafficking by fraud, money, clothing, or other non-violent enticements. *See United States v. McMillian*, 777 F.3d 444, 447 (7th Cir. 2015)(minors enticed into prostitution primarily "by false promises of love and money"); *see also United States v. Booker*, No. 11-1241, 447 Fed. Appx. 726 (7th Cir. Nov. 16, 2011) (victim was already a sex worker when defendant recruited her).

Given this, Jackson's conviction stands or falls under the residual or risk-of-force clause, which, recall, applies when the underlying crime "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Jackson's task of persuading us on appeal that § 924(c)(3)(B) is unconstitutional in the wake of *Johnson* is now a fait accompli: as outlined below, in the time since the district court rejected Jackson's argument, we have extended *Johnson* to conclude that § 924(c)(3)(B) is unconstitutionally vague. *See United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016) (holding that "the residual clause in 18 U.S.C. § 924(c)(3)(B) is … unconstitutionally vague").

In the wake of *Johnson (*and after the district court rejected Jackson's constitutional challenge to § 924(c)), we took up a challenge to the similarly worded residual clause in 18 U.S.C. § 16(b). *See United States v. Vivas-Ceja*, 808 F.3d 719 (2015), *(rehear'g en banc denied* March 14, 2016). In *Vivas-Ceja*, the defendant's maximum sentence for illegally reentering the United States, *see* 8 U.S.C. § 1326, was increased because he had a prior conviction for an "aggravated felony," defined as relevant here as a "crime of violence" under § 16(b), which is

worded identically to § 924(c)(3)(B) to include any felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Deeming the residual clause in § 16(b) "materially indistinguishable" from the ACCA's residual clause, we concluded in *United States v. Vivas-Ceja* that the reasoning of *Johnson* likewise rendered the residual clause of § 16(b) unconstitutionally vague. 808 F.3d at 720. In so doing, we noted the Ninth Circuit's identical conclusion about § 16(b) (in the civil removal context). *See Vivas-Ceja*, 808 F.3d at 722 (citing *Dimaya* 803 F.3d at 1111 (holding that § 16(b) "suffers from the same indeterminancy" as the ACCA's residual clause)). In *Vivas-Ceja*, we also considered and rejected the potential grounds for distinguishing the residual clause in § 16(b) from the ACCA. Specifically, we rejected the government's claim that the confusion created by the ACCA's enumerated list of crimes as well as the difficulty lower courts and the Supreme Court itself had encountered applying the ACCA were critical factors to the Court's determination that the ACCA was unconstitutionally vague. *See Vivas-Ceja*, 808 F.3d at 723 (concluding that neither the confusing list of enumerated crimes in the ACCA nor the "pervasive disagreement" it created among lower courts were "necessary condition[s]" to the Court's vagueness determination in *Johnson*).

Although § 16(b) and § 924(c)(3)(B) are worded identically, the government maintains in its brief that the latter is distinguishable from § 16(b), which applies as a recidivist statute to prior convictions as opposed to a contemporaneous underlying federal crime. It also argues that *Vivas-Ceja* is wrong because

§ 16(b) (and, by extension § 924(c)(3)(B)) are materially distinguishable from the residual clause of the ACCA for largely the same reasons cited by the district court.

As for the government's suggestion that we reconsider our holding in *Vivas-Ceja*, "[w]e require a compelling reason to overturn circuit precedent." *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006) (quoting *McClain v. Retail Food Emp'rs Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005)). Stare decisis principles dictate that we give our prior decisions "considerable weight" unless and until other developments such as a decision of a higher court or a statutory overruling undermine them. *See id.*; *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 858–59 (7th Cir. 2001) ("For the sake of law's stability, a court will not reexamine a recent decision … unless given a compelling reason to do so."). In the case of *Vivas-Ceja*, such a development is not entirely unlikely. Before oral argument, the Supreme Court granted certiorari in *Dimaya* to consider the continued viability of § 16(b) in the wake of *Johnson*. 137 S. Ct. 31 (U.S. Sept. 29, 2016) (granting cert in *Lynch v. Dimaya*, 803 F.3d 1110 (9th Cir. 2015)). Given the obvious parallels between § 16(b) and § 924(c)(3)(B), if the Court overruled *Dimaya*, our holding in *Vivas-Ceja* would likewise be undermined and its rationale inapplicable to § 924(c)(3)(B). Given that uncertainty, we held off issuing our opinion in anticipation of the Supreme Court's ruling in *Dimaya.* Recently, however, the Court restored *Dimaya* to the calendar for reargument in the fall term. *See* Supreme Court of the United States docket for *Sessions v. Dimaya,* No. 15-1498, *available at* https://www.supremecourt.gov/search.aspx?filename=/docketfiles/15-1498.htm (last visited July 27, 2017).

And in the interim, we concluded in *Cardena* that our holding in *Vivas-Ceja* compelled the conclusion that section 924(c) too was unconstitutionally vague. *Cardena*, 842 F.3d at 996.

Although *Cardena* reached its conclusion with little discussion, as discussed above, we had in *Vivas-Ceja* already rejected the arguments other courts have found persuasive in concluding that *Johnson's* rationale does not extend to either § 16(b) or § 924(c)(3)(B).

Given our recent holdings in *Cardena* and *Vivas-Ceja*, we reject the government's argument that the residual clause of § 924(c)(3) is sufficiently distinguishable from either the ACCA's residual clause held unconstitutional in *Johnson* or the identically worded clause in § 16(b). In so doing, we recognize that with the exception of the Ninth Circuit in *Dimaya*, most circuits to have considered the issue since have declined to extend *Johnson's* holding to invalidate either § 16(b) or § 924(c)(3)(B). For instance, the Second, Sixth, Eighth, and Eleventh Circuits have all concluded that the "crime of violence" defined in § 924(c)(3)(B) is not unconstitutionally vague because the text and application are sufficiently distinguishable from the "violent felony" defined in § § 924(e)(2)(B) of the ACCA. *See Ovalles v. United States*, 861 F.3d 1257 (11th Cir. 2017) (rejecting *United States v. Cardena*, collecting and analyzing cases and also noting that because ACCA's § 924(c) applies as a recidivist sentencing enhancement it has a "very different function" than § 924(c)(3)(B) and its offense of use of a firearm during commission of a contemporaneous underlying crime); *United States v. Prickett*, 839 F.3d 697, 699–700 (8th Cir. 2016) (stressing that "the ACCA residual clause is linked to a confusing set of examples that plagued the Supreme Court

in coming up with a coherent way to apply the clause, whereas there is no such weakness in § 924(c)(3)(B)"); *United States v. Hill*, 832 F.3d 135, 145–49 (2d Cir. 2016) (relying on fact that language in § 924(c)(3)(B) is narrower than the ACCA, is not linked to the confusing list of examples in the ACCA, and is temporally limited to a contemporaneous federal predicate crime); *United States v. Taylor*, 814 F.3d 340, 376–79 (6th Cir. 2016) (cataloguing "significant differences making the definition of 'crime of violence' in § 924(c)(3)(B) narrower than the definition of 'violent felony' in the ACCA residual clause"). We acknowledge that the case for distinguishing § 924(c)(3)(B) is not altogether unconvincing, but conclude that, unless we hear differently from the Supreme Court in *Dimaya*, stare decisis and our recent precedents compel the conclusion that § 924(c)(3)(B) is unconstitutionally vague. *See Joy v. Penn-Harris-Madison Sch. Corp.*, 212 F.3d 1052, 1066–67 (7th Cir. 2000) (Under doctrine of stare decisis, panel is bound by recent precedent with substantially similar facts when governing Supreme Court precedent has yet to address the matter). Accordingly, Jackson's § 924(c) conviction for possessing a firearm in relation to a crime of violence must be vacated.

Jackson also challenges the district court's sentencing findings. We evaluate the district court's factual findings under the Guidelines for clear error and its ultimate legal conclusions de novo. *E.g.*, *United States v. Cherry*, 855 F.3d 813, 815–16 (7th Cir. 2017).

The district court added two levels to Jackson's guidelines range under U.S.S.G. § 3B1.1(c). As relevant here, that section applies to any defendant who is "an organizer, leader, manager, or supervisor in any criminal activity." Here Jackson's

objection to § 3B1.1 in the district court was limited to his frivolous claim that he neither supervised nor managed J.T. On appeal, however, he argues that § 3B1.1 is inapplicable because it applies to offenses committed by multiple participants and as a victim, J.T. could not be a "participant" in her own sex trafficking. Raised as it is for the first time on appeal, we review this argument only for plain error. Jackson must thus show (1) an error; (2) that was plain; (3) that affected his "substantial rights"; and (4) the court should exercise discretion to correct the error because it seriously affected the fairness or integrity of the judicial proceedings. *See, e.g., United States v. Armand*, 856 F.3d 1142, 1144 (7th Cir. 2017) (citation omitted).

The application notes to § 3B1.1(c) explain that a defendant must organize or supervise at least "one or more other participants" to qualify for the adjustment, *see* U.S.S.G. § 3B1.1(c) cmt. n. 2. Under the guidelines, a participant is defined as someone "criminally responsible for the commission of the offense," whether or not convicted." *Id.* cmt. n.1. The application notes further clarify that a "person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." *Id.*

This clarification makes clear that the district court erred by applying § 3B1.1 to Jackson. Although it is apparent that he supervised and managed J.T.'s prostitution, Jackson maintains, and the government concedes, that a minor victim cannot be considered a "participant" in her own trafficking. In *United States v. Jarrett*, the Eighth Circuit considered a scenario indistinguishable from Jackson's and concluded that the district court erred by applying § 3B1.1 because sex trafficking

victims cannot be both victims and participants in their own trafficking, 956 F.2d 864 (8th Cir. 1992). As the court in *Jarrett* observed, "the fact that [victims] were transported does not make them participants. Neither does the fact that their conduct was a violation of some other law, for example, a state law against prostitution." *Id.* at 868. Other courts to consider the issue have approved, at least in dicta, of *Jarrett's* holding, concluding that a victim may only be considered a "partici-pant" *if* she coerces or transports or otherwise oversees other victims. *See United States v. Smith*, 719 F.3d 1120, 1126 (9th Cir. 2013); *United States v. Scott*, 529 F.3d 1290, 1303 (10th Cir. 2008) (applying § 3B1.1 when victim had "done far more than undertake her own prostitution activities under [defendant's] supervision"); *see also United States v. Britton*, No. 11-2083, 567 Fed. Appx. 158, 161 (3d Cir. May 29, 2014).

The government concedes that as a victim of Jackson's sex trafficking, J.T. cannot be considered a "participant" such that the manager or supervisor adjustment under § 3B1.1 is applicable. We too conclude that the district court erred in applying § 3B1.1. Moreover, the error was plain and affected Jackson's substantial rights. The two level increase in Jackson's guideline range affected his sentence, and the government concedes that nothing in the record reveals whether the district court, which imposed the minimum sentence available under Jackson's incorrectly calculated guidelines' range, would impose the same sentence without the adjustment under § 3B1.1.

Finally, Jackson challenges the district court's conclusion that his trial testimony amounted to obstruction of justice under § 3C1.1. That section applies when a defendant perjures

himself at trial. *See United States v. Dunnigan*, 507 U.S. 87, 96 (1993). Although a bare denial of guilt is insufficient to sustain the obstruction of justice adjustment, it is appropriate when a defendant takes the stand and tells the jury a false story on material matters. *United States v. Stenson*, 741 F.3d 827, 831 (7th Cir. 2014).

Jackson attempts to characterize his trial testimony as merely a general denial of guilt, but we have no difficulty concluding that the district court's careful factual findings to the contrary were not clearly erroneous. *Id*. (Noting that we review factual findings supporting application of § 3C1.1 for clear error). The district court noted that Jackson testified falsely about a "central issue" in the case by denying that the road trips to Atlanta, Louisville and Grand Rapids were to allow J.T. to engage in prostitution. It also characterized Jackson's insistence that he had no knowledge about J.T.'s provision of sexual services as false and material. Finally, the district court disbelieved Jackson's claim that he did not place any of the Backpage.com ads, finding J.T.'s contrary testimony that Jackson did place the ads more credible. None of these factual findings were clearly erroneous, and in light of these findings the district court certainly did not err by concluding that Jackson obstructed justice under § 3C1.1.

### III.

In light of our holding that § 924(c)(3)(B) is unconstitutionally vague, we VACATE Jackson's conviction under § 924(c) for possessing a firearm in furtherance of a crime of violence. We also VACATE and REMAND for resentencing without the organizer or supervisor adjustment under § 3B1.1.