# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40041

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2016

**Lyle W. Cayce**
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

GREGORIO GONZALEZ-LONGORIA,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas.

Before STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge, joined by DAVIS, JONES, SMITH, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, and COSTA, Circuit Judges:

This case presents the question whether the "crime of violence" definition provided by 18 U.S.C. § 16(b), when incorporated by reference into United States Sentencing Guidelines § 2L1.2(b)(1)(C), is unconstitutionally vague on its face in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Court struck as unconstitutionally vague the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). We hold that 18 U.S.C. § 16(b) is not unconstitutionally vague.

No. 15-40041

I.

In January 2008, Dallas police responded to a disturbance in the street between Gonzalez-Longoria and his common-law wife, Debra Armstrong. According to Armstrong, the two had been fighting about money when Gonzalez-Longoria became upset, grabbed her by the collar, pushed her to the ground, and then, while she was on the ground, kicked her several times in the leg. For this incident, Gonzalez-Longoria was convicted of the misdemeanor offense Assault-Family Violence, in violation of Tex. Penal Code § 22.01(a)(1).

Three months later, in April 2008, Gonzalez-Longoria fought with Armstrong again, this time as she tried to board a bus. According to Armstrong, Gonzalez-Longoria struck Armstrong on the face, and she fell to the ground. For this incident, Gonzalez-Longoria was convicted of the felony offense Assault Causing Bodily Injury with a Prior Conviction of Family Violence, in violation of Tex. Penal Code § 22.01(b)(2). Thereafter, Gonzalez-Longoria, a Mexican citizen, was deported to Mexico.

Six years later, in June 2014, police officers in Combes, Texas, encountered Gonzalez-Longoria walking along the highway. He admitted that he was present in the United States illegally, and the officers arrested him. Thereafter, he pled guilty to being unlawfully present in the United States, in violation of 8 U.S.C. § 1326. During sentencing, the district court applied an eight-level sentencing enhancement on the ground that his prior Texas conviction for Assault Causing Bodily Injury with a Prior Conviction of Family Violence was a "crime of violence" and thus constituted an "aggravated felony" under United States Sentencing Guidelines § 2L1.2(b)(1)(C). That guidelines provision counts as aggravated felonies crimes that meet the "crime of violence" definition provided by 18 U.S.C. § 16(b). *See* U.S.S.G. § 2L1.2, cmt. n.3(A). At sentencing, Gonzalez-Longoria objected to the enhancement, arguing that 18 U.S.C. § 16(b) was unconstitutionally vague. The district court

2

overruled that objection, and his others, and sentenced him to twenty-seven months' imprisonment and three years' supervised release. Gonzalez-Longoria appealed.

While his appeal was pending, the Supreme Court issued *Johnson*, in which it held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. In supplemental briefing, Gonzalez-Longoria argued that the similarities between the Armed Career Criminal Act's residual clause and the "crime of violence" definition provided by 18 U.S.C. § 16(b) mean that § 16(b) must likewise be struck as unconstitutionally vague. The panel agreed, and issued an opinion vacating Gonzalez-Longoria's sentence on the ground that 18 U.S.C. § 16(b), which formed the basis of his eight-level aggravated-felony sentencing enhancement, is unconstitutionally vague in light of *Johnson*.[1] *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016). The government petitioned for rehearing en banc, and we

---

[1] Two other circuits had already invalidated 18 U.S.C. § 16(b), albeit in different contexts, under *Johnson*'s reasoning. *See United States v. Vivas–Ceja*, 808 F.3d 719, 723 (as incorporated into 8 U.S.C. § 1326(b)) (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (civil removal). Both the Second Circuit and Sixth Circuit had distinguished the reasoning in *Johnson* and held that 18 U.S.C. § 924(c)(3)(B), which both courts characterized as identical in all material respects to 18 U.S.C. § 16(b), is not vague. *See United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016); *United States v. Hill*, No. 14-3872, slip op. at 22 (2nd Cir. Aug. 3, 2016). Since the *Taylor* panel opinion was issued, the Sixth Circuit has invalidated 18 U.S.C. § 16(b) as unconstitutionally vague, distinguishing *Taylor* in part on the ground that, "[u]nlike [18 U.S.C. § 924(e)(2)(B)(ii)] and [18 U.S.C. § 16(b)], which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding." *Shuti v. Lynch*, No. 15-3835, 2016 WL 3632539, at *8 (6th Cir. July 7, 2016). However, the *Taylor* decision does not appear to distinguish 18 U.S.C. § 924(c) in this manner. *See Taylor*, 814 F.3d at 378 ("It is true that *Johnson* also relied in part on the fact that the [18 U.S.C. § 924(e)(2)(B)(ii)] residual clause, like § 924(c)(3)(B), requires the application of a categorical approach, which requires courts to look at the ordinary case of the predicate crime.").

No. 15-40041

granted the petition.[2] *United States v. Gonzalez-Longoria*, 815 F.3d 189 (5th Cir. 2016).

## II.

We review de novo a district court's application of the Sentencing Guidelines. *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010). Whether a statute is unconstitutionally vague is a question of law, which we likewise review de novo. *Id.* at 706.

## III.

## A.

Gonzalez-Longoria challenges the sentencing enhancement that he received under section 2L1.2(b)(1)(C) of the Sentencing Guidelines, which provides for an eight-level enhancement to a defendant's base offense level if the defendant was deported following a conviction for an "aggravated felony." The application note to that section of the guidelines provides that "aggravated felony" has "the meaning given that term in 8 U.S.C. 1101(a)(43)." U.S.S.G. § 2L1.2, cmt. n.3(A). That statutory provision, in turn, defines aggravated felonies to include, among other things, "crime[s] of violence . . . as defined in section 16 of Title 18 . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. 1101(a)(43)(F). As defined by 18 U.S.C. § 16(b), a "crime of violence" includes any offense "that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another

---

[2] During the time that Gonzalez-Longoria's case was pending en banc, Gonzalez-Longoria was released from federal custody. This development presents the question whether the conclusion of his time in custody renders this appeal moot. We conclude that it does not. The district court's determination that Gonzalez-Longoria's prior offense was an "aggravated felony" made his offense of conviction *itself* an "aggravated felony." 8 U.S.C. § 1101(a)(43)(O). The district court's "aggravated felony" determination therefore renders Gonzalez-Longoria permanently inadmissible to the United States (among other repercussions), *id.* § 1182(a)(9)(A)(i), (ii), a "collateral consequence" that Gonzalez-Longoria has a concrete and ongoing interest in avoiding. *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004); *accord United States v. Villanueva-Diaz*, 634 F.3d 844, 848-49 (5th Cir. 2011).

No. 15-40041

may be used in the course of committing the offense." It is this definition that Gonzalez-Longoria argues is unconstitutionally vague.

B.

The Fifth Amendment's Due Process Clause protects against criminal convictions based on impermissibly vague statutes. "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556. "These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences."[3] *Id.* at 2557. When a provision is so vague that it specifies "no standard of conduct . . . at all," then the provision "simply has no core," *Smith v. Goguen*, 415 U.S. 566, 578 (1974) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)), and will be vague as applied to anyone—that is, it will be facially vague.

In *Johnson*, the Supreme Court faced a vagueness challenge to the Armed Career Criminal Act's definition of violent felonies. 135 S. Ct. at 2556. The Act includes a statutory sentencing enhancement for violators with three or more earlier convictions for a "violent felony." The Act defines violent felonies to include, among other things, "burglary, arson, or extortion, [offenses] involv[ing] use of explosives, *or [offenses] otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The italicized portion is known as the "residual clause." *Johnson*, 135 S. Ct. at 2556.

---

[3] Here, Gonzalez-Longoria challenges not a statute but a guidelines provision that incorporates by reference a portion of a criminal statute. Because we hold that Gonzalez-Longoria's vagueness challenge fails on the merits, we pretermit the question whether the guidelines are subject to vagueness challenges. *See United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990).

No. 15-40041

In *Johnson*, the Court highlighted two features of the Act's residual clause that together make the clause unconstitutionally vague. *Id.* at 2557. First, the Court observed that "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" under the categorical approach required by *Taylor v. United States*, 495 U.S. 575, 600 (1990).[4] *Id.* Second, the Court noted that the Act's "imprecise 'serious potential risk' standard" was difficult to apply. *Id.* at 2558.

Gonzalez-Longoria argues that the same two problems infect 18 U.S.C. § 16(b), because it too must be interpreted under the categorical approach, *see Perez-Munoz v. Keisler*, 507 F.3d 357, 361 (5th Cir. 2007), and it too contains an imprecise risk standard. These defects, he contends, make 18 U.S.C. § 16(b) unconstitutionally vague on its face. While Gonzalez-Longoria is correct that 18 U.S.C. § 16(b) shares these two features with the Armed Career Criminal Act's residual clause, neither feature causes the same level of indeterminacy in the context of 18 U.S.C. § 16(b).

---

[4] "Under the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion'"—an inquiry known as "ordinary case" analysis. *Johnson*, 135 S. Ct. at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). As the Court summarized in *Johnson*, "good reasons" supported the adoption of the categorical approach with respect to the Armed Career Criminal Act:

> *Taylor* explained that the relevant part of the Armed Career Criminal Act "refers to 'a person who . . . has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses." 495 U.S. at 600. This emphasis on convictions indicates that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Ibid. Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction.

*Id.* at 2562. *See also Mathis v. United States*, 579 U.S. ___, No. 15-6092, 2016 WL 3434400, at *9-11 (June 23, 2016) (summarizing reasons supporting the use of the categorical approach in connection with the Armed Career Criminal Act).

No. 15-40041

The Court's first concern in *Johnson*, about the "grave uncertainty about how to estimate the risk posed by a crime," can be read broadly, as a rejection of the categorical approach whenever it is combined with any degree of risk assessment, or narrowly, as a long-considered ill-ease and eventual repudiation of the categorical approach in the specific context of the Armed Career Criminal Act's residual clause.[5] The narrower reading is more sound. Although both the Act's residual clause and 18 U.S.C. § 16(b) similarly require a risk assessment under the categorical approach, the inquiry that a court must conduct under 18 U.S.C. § 16(b) is notably more narrow. The Act's residual clause requires courts, in imagining the ordinary case, to decide whether the ordinary case would present a "serious potential risk of *physical injury*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). In contrast, 18 U.S.C. § 16(b) requires courts to decide whether the ordinary case "involves a substantial risk that *physical force* against the person or property of another may be used *in the course of committing* the offense." 18 U.S.C. § 16(b) (emphasis added). Risk of physical force is more definite than risk of physical injury; further, by requiring that the risk of physical force arise "in the course of committing" the offense, 18 U.S.C. § 16(b) does not allow courts to consider conduct or events occurring after the crime is complete.

---

[5] *Compare Vivas–Ceja*, 808 F.3d at 722 (holding that 18 U.S.C. § 16(b) is unconstitutionally vague as incorporated into 8 U.S.C. 1326(b) because it must be interpreted according to the same "two-step categorical approach" employed in connection with the Armed Career Criminal Act's residual clause), *Dimaya*, 803 F.3d at 1114, 1116 (holding that 18 U.S.C. § 16(b) is unconstitutionally vague in the civil-removal context because it is "subject to the categorical approach" and employs an "imprecise" risk standard), *and Shuti*, 2016 WL 3632539, at *5 (holding that 18 U.S.C. § 16(b) is unconstitutionally vague in the civil-removal context because "it compels a categorical approach to prior convictions and an imprecise analysis of possible risk"), *with Taylor*, 814 F.3d at 379 (distinguishing the reasoning in *Johnson* and holding that 18 U.S.C. § 924(c)(3)(B), which, as characterized by the court, is identical in all material respects to 18 U.S.C. § 16(b), is not vague), *and Hill*, No. 14-3872, slip op. at 22 (same).

No. 15-40041

As the *Johnson* majority observed, the focus on potential injury in the Armed Career Criminal Act's residual clause requires courts to "imagine how the idealized ordinary case of the crime subsequently plays out." *Johnson*, 135 S. Ct. at 2557-58. This exercise requires courts to guess at the potential risk of possibly future injury. *See Johnson*, 135 S. Ct. at 2559 ("When deciding whether unlawful possession of a short-barreled shotgun is a violent felony, do we confine our attention to the risk that the shotgun will go off by accident while in someone's possession? Or do we also consider the possibility that the person possessing the shotgun will later use it to commit a crime? . . . [H]ow remote is too remote?"); *cf. Paroline v. United States*, 134 S. Ct. 1710, 1717, 1721 (2014) ("The full extent of this victim's suffering is hard to grasp."). The analysis under 18 U.S.C. § 16(b) is more bounded; it requires courts to apply the well-settled test from *Leocal* and determine whether the offense category "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004).[6] Thus, 18 U.S.C. § 16(b), which looks to whether a commission of a crime involves a substantial risk of physical force, is

---

[6] Classifying crimes, especially by assessment of risk of force and violence, is built into the criminal justice system. For example, 18 U.S.C. § 924(c), which provides for enhanced penalties for the use of a firearm in connection with a crime, contains the same definition of "crime of violence" as 18 U.S.C. § 16(b). *See* 18 U.S.C. § 924(c)(3)(B). Likewise, the Bail Reform Act contemplates presumptive imprisonment when a defendant is even charged with a "crime of violence." *See* 18 U.S.C. § 3142(f)(1)(A), (g)(1). Indeed, the definition found in 18 U.S.C. § 16 applies to many provisions of Title 18. *See, e.g.*, 18 U.S.C. § 25(a)(1) (use of minor to commit a crime of violence); § 931(a)(1) (purchase of body armor by violent felons); § 1956(c)(7)(B)(ii) (money laundering); *see also* 18 U.S.C. § 842(p)(2) (facilitating use of explosives in connection with a crime of violence); § 929(a)(1) (use of armor-piercing ammunition in connection with a crime of violence); § 1952(a) (racketeering); § 2250(d) (failure to register as a sex offender); § 2261(a) (domestic violence); § 3559(f) (crime of violence against children).

predictively more sound—both as to notice (to felons) and in application (by judges)—than imputing clairvoyance as to a potential risk of injury.[7]

The Court's second concern, uncertainty about *how much risk* it takes for a crime to qualify, is also less pressing in the context of 18 U.S.C. § 16(b). As the Court highlighted in *Johnson*, a significant reason that the necessary level of risk was so hard to parse in the context of the Armed Career Criminal Act was that the Act's residual clause "forces courts to interpret 'serious potential risk' in light of . . . four enumerated crimes," the rhyme or reason of which no one could make out. *Johnson*, 135 S. Ct. at 2558 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The Court went on to note that, unlike the Armed Career Criminal Act, most similar laws did not "link[ ] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. In 18 U.S.C. § 16(b), the amount of risk required—"substantial risk"—is not linked to any examples. Instead, it is just like the "dozens of federal and state criminal laws" that employ terms such as "substantial risk," "grave risk," or "unreasonable risk," *see Johnson*, 135 S.Ct. at 2561, that state and federal judges interpret as a matter of routine.

These distinctions mean that the concerns raised by the Court in *Johnson* with respect to Armed Career Criminal Act's residual clause do not cause the same problems in the context of 18 U.S.C. § 16(b). While there might be specific situations in which 18 U.S.C. § 16(b) would be vague—although Gonzalez-Longoria does not suggest any in particular—it is certainly not a statute that "simply has no core." *Smith*, 415 U.S. at 578. Thus, we hold that 18 U.S.C. § 16(b) is not unconstitutionally vague on its face.

---

[7] *See also Leocal*, 543 U.S. at 10 n.7 ("Thus, § 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct. The 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct.").

No. 15-40041

C.

Likewise, 18 U.S.C. § 16(b) is plainly not vague as applied to Gonzalez-Longoria. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) ("We consider whether a statute is vague as applied to the particular facts at issue[.]"). Gonzalez-Longoria's most recent crime is Illegal Reentry after Deportation, and his relevant earlier crime was Assault Causing Bodily Injury with a Prior Conviction of Family Violence. Due process requires, first, that Gonzalez-Longoria be able to apprehend that he could face enhanced punishment because his prior offense naturally involves physical force, and, second, that the provision under which he was sentenced not be so standardless as to invite arbitrary or discriminatory enforcement. Both requirements are satisfied.

The standard provided by 18 U.S.C. § 16(b) can be straightforwardly applied to Gonzalez-Longoria's prior offense, as is evidenced by this court's ease in applying the definition to other, similar offenses in the past. For example, in *United States v. Sanchez-Espinal*, 762 F.3d 425 (5th Cir. 2014), a panel of this court held that a New York felony conviction for aggravated criminal contempt qualifies as a "crime of violence" under 18 U.S.C. § 16(b) for purposes of the same eight-level guidelines enhancement at issue here. *Id.* at 431. A conviction for New York aggravated criminal contempt required a defendant to "cause physical injury to a victim for whose benefit an order of protection has been previously issued against the defendant." *Id.* The panel observed that protective orders were usually issued in domestic violence cases, and that a defendant would have to flout such an order to commit the crime. *Id.* at 431-32. The panel concluded: "These elements—a discordant history between the victim and the defendant leading to a court order of protection, which the defendant knowingly violates—underscore our conclusion that a

10

No. 15-40041

violation of [the aggravated criminal contempt statute], by its nature, entails a high probability that physical force will be used." *Id.* at 432.

Here, Gonzalez-Longoria's crime of Assault Causing Bodily Injury with a Prior Conviction of Family Violence consisted of "intentionally, knowingly, or recklessly causes bodily injury to another," committed against a household or family member, or person in a dating relationship with the defendant, when the defendant had a previous conviction for an offense against a household or family member, or person in a dating relationship with the defendant. *See* Tex. Penal Code § 22.01(a)(1) & (b)(2). This describes a crime of domestic violence. Like the New York aggravated criminal contempt conviction held to be a "crime of violence" in *Sanchez-Espinal*, Tex. Penal Code § 22.01(b)(2) is in that category of crimes that "while capable of being committed without the use of physical force, always entail a substantial risk that physical force" will be used. *Sanchez-Espinal*, 762 F.3d at 432 (quoting *Rodriguez v. Holder*, 705 F.3d 207, 213 (5th Cir. 2013)); *see also Perez-Munoz*, 507 F.3d at 364 ("Being able to imagine unusual ways the crime could be committed without the use of physical force does not prevent it from qualifying as a crime of violence under 18 U.S.C. § 16(b)."). Thus, 18 U.S.C. § 16(b)'s standard for when a prior conviction should be counted as a crime of violence can be straightforwardly applied to Gonzalez-Longoria's prior crime of conviction. Gonzalez-Longoria was on sufficient notice that his earlier crime of Assault Causing Bodily Injury with a Prior Conviction of Family Violence is one society condemns as violent because it involves a substantial risk that, in the course of its commission, force will be used against another. We therefore conclude that 18 U.S.C. § 16(b) is not vague as applied to Gonzalez-Longoria.

## D.

We close by noting that the Supreme Court invalidated the Armed Career Criminal Act's residual clause only after "[n]ine years' experience

11

trying to derive meaning from the . . . clause," "repeated attempts and repeated failures to craft a principled and objective standard," and years of "pervasive disagreement" in the lower courts about how to conduct the categorical-approach inquiry with respect to the clause, *Johnson*, 135 S. Ct. at 2558-60— a record of unworkability not present here. Thus, we decline to get ahead of the Supreme Court, invalidating duly enacted and longstanding legislation by implication. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963) (stating that a "strong presumptive validity . . . attaches to an Act of Congress" and that, when possible, courts should seek an interpretation that supports the constitutionality of legislation and avoid invalidating a statute as vague); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). This is especially true because the Court in *Johnson* specifically identified the precedent it was overruling, *see Johnson*, 135 S. Ct. at 2563, yet intimated nothing negative about its earlier, unanimous *Leocal* decision. *See Dimaya v. Lynch*, 803 F.3d 1110, 1129 (9th Cir. 2015) (Callahan, J., dissenting) ("The Supreme Court will be surprised to learn that its opinion in *Johnson* rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention *Leocal* and specifically concluded with the statement limiting its potential scope."); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012).

## IV.

The judgment of the district court is affirmed.

No. 15-40041

JONES, Circuit Judge, joined by SMITH, Circuit Judge, concurring:

Although I concur in the majority opinion holding that 18 U.S.C. § 16(b) is not unconstitutionally vague in the wake of *Johnson v. United States*, 135 S. Ct. 2551 (2015), our disagreement over that proposition could have been obviated with a holding that neither the U.S. Sentencing Guidelines, nor extrinsic statutes cross-referenced in the Guidelines, are subject to challenges based on the Due Process Clause's prohibition of vague laws. This holding flows from the recognition of several principles. First, *Johnson* itself did not treat or address the Guidelines. Second, no other Supreme Court case has implied the propriety of vagueness challenges in the realm of Guidelines sentencing. Third, the Supreme Court's most recent sentencing cases are not to the contrary. Fourth, this court has repeatedly rebuffed vagueness challenges to Guidelines sentencing, and we remain bound by that line of case law. Fifth, as a matter of principle and logic, sentencing under the Guidelines remains discretionary with the district courts. Sixth, allowing vagueness challenges to the Guidelines would threaten both the Guidelines themselves and the federal law beyond the Guidelines. The following discussion will elaborate on each of these points.[1]

1. *Johnson* itself did not specifically treat or address the Guidelines. In *Johnson*, the Supreme Court recognized "statutes fixing sentences" as susceptible to vagueness challenges and declared the residual clause of the Armed Career Criminal Act (ACCA) unconstitutionally vague. *Id.* at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123, 99 S. Ct. 2198, 2204 (1979)). ACCA is a statute fixing a punishment. Normally, by federal law, the

---

[1] The Supreme Court will have this issue before it next term in *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015) (per curiam), *cert. granted*, No. 15-8544, 2016 WL 1029080 (U.S. June 27, 2016).

maximum sentence a previously convicted felon faces for possessing a firearm—in violation of 18 U.S.C. § 922(g)—is 10 years. *See* 18 U.S.C. § 924(a)(2). Under ACCA, however, defendants with three or more previous convictions for violent felonies *must* be sentenced to at least 15 years. *See* 18 U.S.C. § 924(e)(1). Johnson's sentence thus went from a 10 year maximum to a 15 year minimum based on the residual clause. 135 S. Ct. at 2556. ACCA's residual clause is thus very much like a "crime" itself. Without notice or predictability about which of his prior felonies would qualify under ACCA, Johnson had no idea when he possessed a firearm in violation of ACCA whether his range of punishments would be 15 years to life, as opposed to zero to 10 years.

The Court concluded that the use of a vague provision, like the residual clause, "to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process." *Id.* at 2560. ACCA itself mandated the increase in Johnson's sentence and thus denied him due process. *Id.* at 2557.

The Guidelines, in contrast, criminalize no conduct and fix no sentence. Contrasted with ACCA's mandated sentence minimum, the Guidelines merely advise the sentencing judge of a potentially reasonable sentence within the statutory range and then leave the actual sentence to the judge's discretion.

2. No other Supreme Court case has directly confronted a vagueness challenge to the Guidelines or implied the propriety of such a challenge. All of the Court's vagueness cases involving sentencing provisions have addressed statutes prescribing a minimum or maximum sentence for a particular offense. Besides *Johnson*, *United States v. Batchelder* involved a statute fixing a maximum sentence of five years for a gun crime. 442 U.S. at 123, 99 S. Ct. at 2204. *United States v. Evans* concerned the statutorily-fixed range of

punishments for an immigration crime.  333 U.S. 483, 483–84, 68 S. Ct. 634 (1948).  *Chapman v. United States* included a vagueness challenge to the statute fixing a mandatory minimum sentence based on drug weight.  500 U.S. 453, 467–68, 111 S. Ct. 1919, 1929 (1991).

The Supreme Court's most relevant cases have all held against the vagueness propositions discussed in *Johnson*—notice and arbitrary enforcement—from the standpoint of sentencing.  Beginning with notice, in *Irizarry v. United States*, the Court held that a criminal defendant was not entitled to prior notice that the district court was considering sentencing him outside of the applicable Guidelines range.  553 U.S. 708, 712–13, 128 S. Ct. 2198, 2201–02 (2008).  Because the Guidelines are not mandatory and the district court had discretion to sentence the defendant anywhere within the statutory range, the Court held that the defendant had no "expectation subject to due process protection" of a Guidelines sentence.  *Id.* at 713, 128 S. Ct. at 2202.

*Batchelder* concerned a defendant whose conduct violated two statutes.  442 U.S. at 116, 99 S. Ct. at 2200.  The laws prohibited identical conduct, but one authorized a maximum sentence of two years and the other authorized a maximum sentence of five years.  *Id.* at 116–17, 99 S. Ct. at 2200.  A unanimous Supreme Court rejected Batchelder's argument that the laws were unconstitutionally vague because they did not give him fair notice whether the consequence of his crime would be a sentence of two years or five years.  *Id.* at 123, 99 S. Ct. at 2204.  The Court held the notice requirements of due process were satisfied so long as the statutes "clearly define[d] the conduct prohibited and the punishment authorized."  *Id.*

The Supreme Court's concerns about arbitrary enforcement likewise imply nothing about the propriety of vagueness challenges under the

Guidelines.   *Johnson* said little about this aspect of vagueness in the sentencing context, merely remarking that the residual clause's indeterminacy "invite[d] arbitrary enforcement by judges" in fixing the 15 year minimum sentence.  *See Johnson*, 135 S. Ct. at 2557.  *Batchelder* didn't address the arbitrary enforcement aspect of vagueness at all, but did find that the sentencing scheme was not so arbitrary as to violate the Equal Protection Clause.  442 U.S. at 125 & n.9, 99 S. Ct. at 2204–05 & n.9.   The defendant in *Chapman* asserted that his sentence violated the Due Process Clause because it was "arbitrary" and "the [due process] right to be free from deprivations of liberty as a result of arbitrary sentences is fundamental."  500 U.S. at 464, 111 S. Ct. at 1927.   The Court soundly rejected this argument.   Due process requires a conviction after a trial "in accordance with relevant constitutional guarantees."  *Id.* at 465, 111 S. Ct. at 1927.   But once convicted, due process has far less purchase: "[A] person who has been convicted [of a crime] is eligible for, and the court may impose, whatever punishment is *authorized by statute for his offense*, so long as that penalty is not cruel and unusual" and not based on a distinction which would violate the Equal Protection Clause as being without a rational basis.  *Id.* (emphasis omitted and added).

Concerns about widespread arbitrary enforcement are largely missing in the Guidelines setting.  As is made clear by the context of *Kolender* and the cases it cites, the Court's fear was that the "policeman on his beat" and local prosecutors would use shapeless laws to harass disfavored persons and minority groups with arrest and conviction.  461 U.S. at 358, 103 S. Ct. at 1858 (citing, *e.g.*, *Smith v. Goguen*, 415 U.S. 566, 575, 94 S. Ct. 1242, 1247–48 (1974)).  Those concerns are misplaced here.  Convictions and sentences are not based on the Guidelines.  Instead, they are based on "unambiguous"

statutory statements of the "activity proscribed and the penalties available upon conviction." *Batchelder*, 442 U.S. at 123, 99 S. Ct. at 2204.

The combined lesson of the Supreme Court's vagueness cases which have addressed sentencing is this: Due process requires only notice and predictability in the statutory range of punishments following conviction. Because due process requires no more, vagueness challenges cannot stand against a discretionary scheme of sentencing within that range.

3. The Supreme Court's recent sentencing cases are not to the contrary. *Peugh v. United States* is the leading case cited by proponents of Guidelines vagueness challenges,[2] but the Ex Post Facto challenge in *Peugh* is quite different from the proposed vagueness challenge in this case. In *Peugh*, the Court allowed a defendant to challenge his sentence under the Ex Post Facto clause because it was based on a Guidelines calculation not in force on the date of his offense. 133 S. Ct. 2072, 2085–88 (2013). *Peugh* did not declare that the Guidelines are subject to any and all constitutional challenges. Instead the Court explicitly rejected that notion: "[A]nalytically distinct" constitutional challenges should not be assumed to lie against the Guidelines. *Id.* at 2088. Ex Post Facto challenges are unique because of the Clause's history and interpretation. *Id.* at 2086. They require only a "significant risk" of a higher sentence to trigger the Clause's protections. *Id.* at 2088. In contrast, vagueness challenges are "analytically distinct" because all of the Supreme Court's precedents have made clear they only lie against those statutes that

---

[2] *See United States v. Pawlak*, No. 15-3566, 2016 WL 2802723, at *3 (6th Cir. May 13, 2016) (published); *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015). The Eighth Circuit recently held that the Guidelines are susceptible to vagueness attacks based on the reasoning of *Johnson*, but as demonstrated above, *Johnson* did not treat the Guidelines and there are material differences between ACCA and the Guidelines. *United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015) (per curiam).

No. 15-40041

"fix" sentences. *See Johnson*, 135 S. Ct. at 2556. And *Peugh* itself reaffirmed the holding of *Irizarry* that a defendant has no due process interest in an expected Guidelines range. 133 S. Ct. at 2085 (plurality opinion).

Nor does the Ex Post Facto clause rest on the same principles of fair notice and avoiding arbitrary enforcement that underlie due process. The Supreme Court has soundly rejected attempts to view the two as protecting identical interests. *See Rogers v. Tennessee*, 532 U.S. 451, 458–60, 121 S. Ct. 1693, 1698–1700 (2001). Ex Post Facto's primary concern is vindictive *legislative* action. *See, e.g.*, *Miller v. Florida*, 482 U.S. 423, 429, 107 S. Ct. 2446, 2451 (1987). Vagueness is principally worried about vindictive *enforcement* action. *See, e.g.*, *Kolender*, 461 U.S. at 358, 103 S. Ct. at 1858. The notice interest is also different between the two. Vagueness examines how much ambiguity and uncertainty are acceptable in the law. It looks to situations where the public is not able to determine what actions are prohibited by a certain law. Ex Post Facto is concerned with notice in the context of principles of reliance and "fundamental justice." *See, e.g.*, *Peugh*, 133 S. Ct. at 2085 (plurality opinion) (quoting *Carmell v. Texas*, 529 U.S. 513, 531, 120 S. Ct. 1620, 1631 (2000)). It concerns situations where the law is definite but retroactively punishes conduct or enhances previously prescribed punishment.

Two other recent sentencing cases that rely on the anchoring effect of the Guidelines are also unavailing to Gonzalez-Longoria. In both *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016), and *Freeman v. United States*, 564 U.S. 522, 529, 131 S. Ct. 2685, 2692 (2011) (plurality opinion), the Court evaluated whether the district court would have sentenced differently if it had considered a lower Guidelines range. These examine the practical effect of the Guidelines on sentencing questions, but are uninformative about the impact of the Due Process Clause on sentencing provisions. Instead, the Supreme Court

18

No. 15-40041

has already stated that due process is satisfied by an unambiguous statement of the "the penalties *available* upon conviction." *Batchelder*, 442 U.S. at 123, 99 S. Ct. at 2204 (emphasis added).

4. Consistent with these principles, this court has repeatedly rebuffed vagueness challenges to Guidelines sentencing. We remain bound by that line of case law, which the instant en banc decision has not disturbed. In *United States v. Pearson*, the court considered a due process challenge by a defendant who claimed he was not on notice he would be sentenced as a career offender under the Guidelines. 910 F.2d 221, 222 (5th Cir. 1990). *Pearson* held that the defendant had notice of the correct statutory maximum and that is all the Constitution demands. "Due process does not mandate . . . either notice, advice, or probable prediction of where, within the statutory range, the [G]uideline sentence will fall." *Id.* at 223 (citing *United States v. Jones*, 905 F.2d 867 (5th Cir. 1990)). Since 1990, we have relied on *Pearson* to reject vagueness challenges to the Guidelines in multiple unpublished opinions.[3]

5. Sentencing under the Guidelines is ultimately discretionary with the district courts. *See United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 757 (2005). Federal sentencing begins with the correct calculation of the Guidelines range, but district courts are not permitted to "presum[e] that the Guidelines sentence should apply." *See Nelson v. United States*, 555 U.S. 350, 352, 129 S. Ct. 890, 892 (2009) (per curiam) (quoting *Rita v. United States*, 551

---

[3] *See, e.g.*, *United States v. Velazquez*, No. 06-41469, 2007 WL 2437961, at *1 (5th Cir. Aug. 21, 2007) (per curiam) (unpublished); *United States v. Perez*, 32 F. App'x 129, 2002 WL 335081, at *1 (5th Cir. 2002) (per curiam) (unpublished table decision); United *States v. Medina-Camposano*, 229 F.3d 1147, 2000 WL 1239063, at *1 (5th Cir. 2000) (per curiam) (unpublished table decision); *United States v. Porras-Cano*, 172 F.3d 869, 1999 WL 129933, at *1 (5th Cir. 1999) (per curiam) (unpublished table decision); *see also United States v. Wilson*, 622 F. App'x 393, 405 n.51 (5th Cir. 2015) (per curiam) (citing *Pearson* for the proposition that "[o]ur case law indicates that a defendant cannot bring a vagueness challenge against a Sentencing Guideline").

U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007)).  Instead the district court must consider the range in light of the Guidelines policy statements and the sentencing factors contained in 18 U.S.C. § 3553(a).  *See Gall v. United States*, 552 U.S. 38, 49–50, 128 S. Ct. 586, 596–97 (2007).  The district court may adjust the sentence up or down from the Guidelines range based on literally any other consideration related to the defendant,[4] including, for example, the district court's policy disagreements with the Guidelines.[5]  Though the Guidelines must be given "respectful consideration" they do not dictate the defendant's ultimate sentence.  *See Pepper v. United States*, 562 U.S. 476, 490, 121 S. Ct. 1229, 1241 (2011).  In reality, for over half of federal defendants last year, the Guidelines didn't even provide a reliable indication of what that sentence might be because the district court, in some instances at the urging of the Department of Justice, adjusted the sentence outside of the Guidelines range.[6]

Before the Guidelines, sentencing was entirely discretionary within the limits of the statutory maxima and minima.  *See Mistretta v. United States*, 488 U.S. 361, 363, 109 S. Ct. 647, 650 (1989).  Yet this regime was never impugned as creating constitutional vagueness problems.  *See United States v. Matchett*, 802 F.3d 1185, 1195 (11th Cir. 2015) (citing *Lockett v. Ohio*, 438 U.S. 586, 602–04, 98 S. Ct. 2954, 2963–65 (1978)).  It would be ironic if the

---

[4] *Pepper v. United States*, 562 U.S. 476, 488–90, 121 S. Ct. 1229, 1240 (2011) (discussing 18 U.S.C. § 3661).

[5] *Kimbrough v. United States*, 552 U.S. 85, 109–11, 128 S. Ct. 558, 575–76 (2007).

[6] The U.S. Sentencing Commission reports that in 2015, only 47.3% of federal defendants received a sentence within their Guidelines range.  *See* U.S. Sentencing Comm'n, National Comparison of Sentence Imposed and Position Relative to the Guideline Range, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/TableN.pdf.

No. 15-40041

Guidelines, which seek to channel (though not control) judges' discretion, could be described as more arbitrary and providing less notice than sentencing throughout this nation's history.

6.  I close with four additional points.  First, the original panel's distinction between a vagueness challenge to a statute incorporated into a Guideline and a vagueness challenge to the Guideline itself is untenable.  It has no basis in common sense or precedent.  Gonzalez-Longoria only asserts an interest in this case because § 16(b) was incorporated into the Guidelines applied to him.  He has no freestanding ability to assert § 16(b) is vague and thus any vagueness challenge is necessarily against the Guideline incorporating it.

Second, I agree with the Eleventh Circuit that allowing such challenges has the potential to upend federal sentencing.  *See Matchett*, 802 F.3d at 1196.  For example, Guideline provisions dealing with relative culpability—such as "minor participant,"[7] "organizer or leader of a criminal activity,"[8] or "manager or supervisor (but not an organizer or leader)" of a criminal activity[9]—are all potentially vague.  *See id.*  But they serve an important and laudable role in encouraging district courts to reach some group level of uniformity and proportionality in assessing individual culpability and sentencing similarly situated defendants.

Third, allowing vagueness challenges to statutes incorporated into the Guidelines would have far-reaching implications.  As the majority opinion

---

[7] U.S.S.G. § 3B1.2(b).

[8] U.S.S.G. § 3B1.1(a).

[9] U.S.S.G. § 3B1.1(b).

21

demonstrates, applications of § 16(b) are pervasive throughout the federal criminal and immigration laws. The Guidelines also incorporate numerous definitions from outside of the federal criminal law. They use statutory pieces from ERISA,[10] the Investment Advisors Act,[11] the Native American Graves Protection and Repatriation Act,[12] and the Higher Education Act of 1954,[13] just to name a few. Those definitions are, in turn, incorporated into other statutes and regulations throughout the federal law. Declaring a statutory definition void for vagueness would have wide-ranging effects because the Supreme Court holds that a successful vagueness challenge renders the law "incapable of any valid application." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5, 102 S. Ct. 1186, 1191 n.5 (1982). This is not a step we should invite through the discretionary world of the Guidelines.

Finally, we should not allow Gonzalez-Longoria to challenge for vagueness a statute that plainly applies to him. Where First Amendment freedoms are not at issue, a "vagueness claim must be evaluated as the statute is applied to the facts of [the] case." *See Chapman*, 500 U.S. at 467, 111 S. Ct. at 1929 (citing *United States v. Powell*, 423 U.S. 87, 92, 96 S. Ct. 316, 319 (1975)). This precept is "well established." *See Powell*, 423 U.S. at 92, 96 S. Ct. at 319 (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 714 (1975)). As the majority opinion details, § 16(b) is not vague as applied to the facts of Gonzalez-Longoria's case.

---

[10] U.S.S.G. § 2E5.1 cmt. n.3 (citing 29 U.S.C. § 1002(21)(A)).

[11] U.S.S.G. § 2B1.1 cmt. n.15(A) (citing 15 U.S.C. § 80b-2(a)(11)).

[12] U.S.S.G. § 2B1.5 cmt. n.1(A)(iv) (citing 25 U.S.C. § 3001(3)).

[13] U.S.S.G. § 2B1.1 n.8(D) (citing 20 U.S.C. § 1001).

No. 15-40041

For the foregoing reasons, I would hold the Guidelines categorically immune from vagueness challenges.

No. 15-40041

E. GRADY JOLLY, Circuit Judge, joined by STEWART, Chief Judge, DENNIS, and GRAVES, Circuit Judges, dissenting:

I am in agreement with the majority's framework for deciding this case. Specifically, I agree that *Johnson* "highlighted two features of the [Armed Career Criminal] Act's residual clause that together make the clause unconstitutionally vague [and that] 18 U.S.C. § 16(b) shares these two features." I also agree that "neither feature causes *the same level* of indeterminacy in the context of 18 U.S.C. § 16(b)." The majority, however, drifts from reason—and into the miasma of the minutiae—when it determines that these vagaries suffice to distinguish § 16(b) from the residual clause. Accordingly, I respectfully dissent.

The majority offers two distinctions between the residual clause and § 16(b). I agree that both distinctions exist. Both distinctions, however, are much less analytically consequential than the majority suggests; both "are, ultimately, distinctions without a difference," as the Sixth Circuit recently held. *Shuti v. Lynch*, No. 15-3835, 2016 WL 3632539, at *7 (6th Cir. July 7, 2016). Furthermore, the ACCA's residual clause was *clearly* unconstitutional and, even though § 16(b) may be slightly less indeterminate, it is nonetheless similar enough to the residual clause to be trapped by the same unconstitutional character.

Let's start with the majority's two distinctions between the residual clause and § 16(b). First, the majority points out that the residual clause's use of potential injury "requires courts to guess at the *potential risk of possibly future injury*." In contrast, § 16(b) asks only "whether a perpetrator's commission of a crime *involves a substantial risk of physical force*." The difference, when sliced very thinly, may indicate that § 16(b) is slightly less

24

indeterminate because a reviewing court can more easily determine the physical force of a crime than the future injury resulting from a crime; nonetheless, nearly all uses of physical force "risk a possibility of future injury." Thus, virtually every criminal act that satisfies the § 16(b) test could also satisfy the residual clause's test; any distinction between the two statutes on this ground is of indeterminate ultimate consequence to § 16(b)'s unconstitutionality under *Johnson*.

Second, the majority points out that the residual clause was preceded by "a confusing list of examples." In particular, the *Johnson* Court was troubled by the inclusion of "burglary" as an example of a residual clause crime. *Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015). ("The inclusion of burglary . . . among the enumerated offenses suggests that a crime may qualify under the residual clause even if the physical injury is remote from the criminal act. But how remote is too remote? Once again, the residual clause yields no answers."). And, as the majority points out in "§ 16(b), the amount of risk required—'substantial risk'—is not linked to any examples" in the text.

Again, I can agree that this provides a shadow of difference, but hardly a constitutional sockdolager. This difference between the two statutes is particularly slight because, through judicial interpretation, § 16(b) not only contains an example, it contains *the very example that most troubled the* Johnson *Court*. Specifically, the Supreme Court has previously explained that burglary is the "classic example" of a § 16(b) crime. *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004). And "burglary" was the most confusing of the residual clause's "confusing examples." If "burglary" is a confusing example in one statute, then it is just as confusing in the other. Certainly, § 16(b) offers no more guidance about how much physical force, if any, is risked in an ordinary burglary than

the residual clause offers regarding the risk of injury from an ordinary burglary.  As a result, the (judicially created) example in § 16(b) is nearly as confusing as the textual examples in the residual clause; again, any distinction between the two statutes is not salient enough to constitutionally matter.

In short, the differences identified by the majority may be distinctions, but are truly "distinctions without a difference," *Shuti*, 2016 WL 3632539, at *7, and cannot account for different constitutional treatment of such otherwise similar statutes.

* * *

The majority's second error is that it assumes, without supporting reasoning, that even minor differences between the residual clause and § 16(b) justify treating the two statutes differently.  The majority starts from the premise that § 16(b) is less indeterminate than the residual clause (I agree), and then concludes that § 16(b) is therefore constitutional (I disagree).  This conclusion does not follow.

To reach this erroneous conclusion, the majority misreads *Johnson*. Specifically, the majority appears to read *Johnson* as, in effect, drawing a line in the sand at the residual clause and decreeing "anything clearer than this is constitutional; anything vaguer is not."  And if this reading of *Johnson* were correct, then the majority could rightly point to even minor distinctions to argue that § 16(b) falls on the constitutional side of the line.

But the *Johnson* Court did not draw a line at the residual clause. Instead, the *Johnson* Court held that the residual clause was *so clearly unconstitutional* that the Court should overrule two past cases, setting aside the revered doctrine of stare decisis to do so.  Of course, the Supreme Court is painfully reluctant to depart from the "vital rule of judicial self-government"

embodied in stare decisis. *Johnson*, 135 S. Ct at 2563. That it chose to override the principle of stare decisis in *Johnson* demonstrates that the residual clause had trespassed well over the constitutional line.

Thus, the proper inquiry is not whether there are *any* differences between § 16(b) and the residual clause; there assuredly are. Instead, the proper inquiry is whether the dissimilarities between the two statutes allow dissimilar resolutions to the fundamental question of their constitutionality.

In conducting this inquiry, I simply return to the text. Compare a crime "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" with an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." These statutes read extremely similarly. The majority of circuits to have considered the question have held that these two similar texts must suffer the same constitutional fate. *Compare Shuti*, 2016 WL 3632539, *and United States v. Vivas-Ceja*, 808 F.3d 791 (7th Cir. 2015), *and Dymaya v. Lynch*, 803 F.3d 1110 (9th Cir 2015) (striking down § 16(b) or materially identical laws) *with United States v. Hill*, No. 14-3872, slip op. at 22 (2nd Cir. Aug. 3, 2016) (upholding such a law). The majority, engrossed by thinly sliced and meaningless distinctions, adopts the minority view and errs by losing track of the entirety: these statutes, in constitutional essence, say the same thing.

Accordingly, I respectfully dissent.