Filed 3/26/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

JOSE MANUEL AVENA,

     Defendant and Appellant.

E083900

(Super.Ct.No. INF1500507)

OPINION

APPEAL from the Superior Court of Riverside County. Charles G. Rogers, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed.

Sabrina R. Damast, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

Convicted defendants who are no longer in criminal custody may move to have their convictions vacated if prejudicial error prevented them from understanding the immigration consequences of the conviction. Defendant and appellant Jose Manuel Avena moved for such relief, under Penal Code section 1473.7, and the trial court denied the motion. We hold that, had Avena been made aware of a change in law that, shortly before his 2017 conviction, opened the door to an immigration-safe plea, there is a reasonable possibility he would have sought—and the People and the trial court would have accepted—such an alternative to trial. We therefore reverse.[1]

## I. BACKGROUND

"The Immigration and Nationality Act (INA) renders deportable any alien convicted of an 'aggravated felony' after entering the United States. [Citation.] Such an alien is also ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country. [Citations.] Accordingly, removal is a virtual certainty for an alien found to have an aggravated-felony conviction, no matter how long he has previously resided here." (*Sessions v Dimaya* (2018) 584 U.S. 148, 153 (*Sessions*); *Padilla v. Kentucky* (2010) 559 U.S. 356, 364 [with an aggravated felony, "removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General"]; *Valdez Amador v. Garland* (9th

---

[1] Undesignated statutory references are to the Penal Code.

Cir. 2022) 28 F.4th 72, 78 [a noncitizen convicted of an aggravated felony "is not only deportable, but also ineligible for discretionary relief"].)

"The INA defines 'aggravated felony' by listing numerous offenses and types of offenses" and "includes 'a crime of violence . . . for which the term of imprisonment [is] at least one year.'" (*Sessions*, *supra*, 584 U.S. at p. 153.) A "crime of violence," in turn, includes any "offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." (18 U.S.C. § 16(a).) In addition to this "elements clause," the term "crime of violence" has also been defined by a so-called "residual clause," which includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (*Sessions*, *supra*, at p. 153; 18 U.S.C. § 16(b).)

In April 2015, Avena was charged with assault with intent to commit rape (§ 220), attempted forcible rape (§§ 261, subd. (a)(2), 664), and false imprisonment (§ 236), all stemming from a single incident some months prior. Assault with intent to commit rape is punishable by imprisonment for two, four, or six years (§ 220, subd. (a)(1)), and it is undisputed that such a crime is a crime of violence under the elements clause and is therefore an aggravated felony. Avena's removal was virtually certain if he were convicted on the charges.

Avena, who is not a United States citizen, was represented by a public defender for a few months before retaining his own counsel. Charles Roby was Avena's public

defender. As Avena averred in his section 1473.7 motion: "We had a couple of discussions about my case. . . . We did discuss my immigration status, and my plans to gain immigration status through my wife. He told me that there could be complications. I stressed to Mr. Roby that I had four young children . . . and that my biggest concern was being around for my children. . . . Mr. Roby did not tell me that what I was facing was mandatory deportation and inadmissibility for life." Roby, who testified at the hearing on the section 1473.7 motion, could not remember for certain whether he told Avena he "would" be deported or "would potentially" be deported. Roby also testified that, had Avena indicated that he would not accept a plea deal, Roby would have noted that in his case file, which contains no such note.

Avena hired Michael Kennedy as trial counsel on August 31, 2015. At the beginning of his representation, Kennedy asked Avena if Roby had discussed immigration issues with him, and Avena replied that he had. Kennedy then asked whether Avena wanted to discuss anything regarding immigration, and Avena said no. At no point did Kennedy tell Avena that he would be removed if he were convicted. At the section 1473.7 motion hearing, Kennedy testified that if the current version of section 1473.7—expanded to include convictions following trial—had been in effect at the time, he would have discussed immigration consequences with Avena, but because no such law was then in effect, he believed such a discussion "would start to sound like I was trying to persuade him to take some kind of plea bargain, which I had already promised him I wouldn't do." Kennedy stated: "My recollection is Mr. Avena said he was innocent, and

4

did not want to be talked into any kind of plea bargain. . . . I made it plain to him if he considered himself innocent, I was not going to talk him into anything other than going to trial."[2]

At one point during Kennedy's representation, the prosecution offered the middle term sentence on the assault with intent to commit rape charge, or a four-year prison sentence. The prosecutor testified at the section 1473.7 motion hearing. He stated that any offer made on behalf of the prosecution "needed to be a prison offer." His supervisor provided "parameters" for a plea that called for prison time, sex offender registration, and a "strike."[3] When asked whether his office would have made an immigration-safe offer, the prosecutor did not suggest that his office sought or considered immigration consequences. Rather, he reiterated that any offer needed to have the stated parameters. Avena and Kennedy rejected the offer without making a counteroffer.

---

[2] While section 1473.7, subdivision (a)(1) offers only post-conviction relief, we understand Kennedy's statements here to mean that he was not as focused on immigration consequences at the time as he now would be, as the duties imposed on defense counsel representing immigrants were changing and growing. (See Eagly et al., *Restructuring Public Defense After* Padilla (2022) 74 Stan.L.Rev. 1, 71 ["some seasoned attorneys are still practicing under [pre-2010] standards by not providing clients with the appropriate immigration advice before those clients enter into a plea or proceed to trial"]; § 1016.3, subd. (a), added by Stats. 2015, ch. 705, § 2.)

[3] (See *People v. Henderson* (2022) 14 Cal.5th 34, 43-44 ["The Three Strikes scheme comes into play when a defendant is charged with new felony offenses but has previously been convicted of designated serious or violent felonies. Although these prior convictions are sometimes referred to as 'strikes,' the Three Strikes law itself does not use that term, instead defining 'serious' or 'violent' felonies with specificity."], fn. omitted.)

In October 2015—about a month after Kennedy began representing Avena—the Ninth Circuit decided *Dimaya v. Lynch* (9th Cir. 2015) 803 F.3d 1110 (*Lynch*). In *Lynch*, the Ninth Circuit held that the so-called residual clause of the federal "crime of violence" definition was unconstitutionally vague. (*Lynch*, *supra*, 803 F.3d at p. 1111, affd. *sub nom. Sessions*, *supra*, 584 U.S. at p. 175.) Assault with intent to commit rape remained an aggravated felony after *Lynch*, as that crime relies on the elements clause of the federal definition, not the residual clause. However, two other California crimes, burglary and sexual battery, were no longer aggravated felonies. (Cf. *Lisbey v. Gonzales* (9th Cir. 2005) 420 F.3d 930, 931 [holding that California's crime of sexual battery constitutes an aggravated felony under the residual clause]; *Lopez-Cardona v. Holder* (9th Cir. 2011) 662 F.3d 1110, 1112 [same as to first degree burglary].) Burglary is relevant here because the victim testified that she rented a room in Avena's house and woke up the night of the incident to see Avena inside her locked room. (See §§ 459, subd. (a) ["Every person who enters any . . . room . . . with intent to commit . . . any felony is guilty of burglary"], 460, subd. (a) ["Every burglary of an inhabited dwelling house . . . is burglary of the first degree"].) Felony sexual battery is punishable by two, three, or four years in prison (§ 243.4, subd. (a)) and requires registration as a sex offender (§ 290, subd. (c)(1)). First degree burglary is a "strike." (§ 1192.7, subd. (c)(18).) At the section 1473.7 hearing, Roby testified that he would have "steered away" from a burglary plea when representing Avena because it was an aggravated felony. But

it was no longer one after *Lynch*, and he would have offered a plea to burglary and sexual battery had he still been representing Avena by the time the case was decided.

A jury convicted Avena on all charges in 2017. At sentencing, the trial court granted Avena three years of probation despite him being presumptively ineligible for it. (See § 1203.065, subd. (b)(1) [defendants convicted of assault with intent to commit rape ineligible for probation "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation"], Cal. Rules of Court, rule 4.413(b)-(c).) It noted that Avena had no criminal history and that the victim suffered no physical injuries, as Avena did not otherwise use force other than his size and weight. It accordingly imposed a term of four years and eight months, suspended execution of that sentence, and granted Avena three years of probation. (See *People v. Howard* (1997) 16 Cal.4th 1081, 1087 ["where a sentence has actually been imposed but its execution suspended," if the suspension is later revoked, "'[t]he revocation of the suspension of execution of the judgments brings the former judgment into full force and effect'"].)

In 2023, Avena filed his section 1473.7 motion. He stated that when he decided to go to trial, he had been in the United States for 16 or 17 years. While in the United States, he married a United States citizen and had four children born in the United States. He has three siblings in the United States, one of whom is a naturalized citizen and another who is a legal permanent resident. He stated: "If I had known that taking a deal was going to be a better alternative for me, for my family, I would have asked my attorney to negotiate a deal for me instead of taking my case to trial. I would have

7

accepted a strike or even two. I would not have risked the family separation that I am currently facing."

The People opposed the motion on procedural and substantive grounds. Procedurally, the People argued that Avena was barred from bringing the motion because his conviction had been final years before the current version of the statute became effective. On the merits, the People argued that Roby had discussed immigration consequences with Avena, that Avena had no evidence to support his claim that he would not have proceeded to a jury trial had he been made aware of immigration consequences, and that there was no evidence that the prosecution would have entertained a plea offer.

After a hearing where Roby, Kennedy, and the prosecutor testified, the trial court denied the motion. It first agreed with the People that Avena could not bring the motion as a matter of law because his conviction was already final. It then found Roby's testimony credible and that he had advised Avena of immigration consequences. It found that the prosecutor would not have accepted anything less than the plea offer that was proposed. It rejected Avena's assertion that he would have accepted an immigration-safe plea bargain because Avena told the police and both his lawyers that he was innocent. It stated: "[H]ad an offer been made, Mr. Avena would not have accepted that for whatever his reasons were. It may have been anger. It may have been he felt he was being manipulated. It may have been he was a prideful man. But he wasn't going to take that deal anyway had such a deal been placed on the table."

## II.  DISCUSSION

"In 2016, the Legislature considered the problems faced by defendants who 'were unaware of the immigration consequences posed by a plea entered many years earlier' and were no longer in state custody." (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 12 (*Carrillo*), citing *People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*).)  "The convictions of defendants who had completed their sentences and any probation or parole period were beyond the reach of habeas corpus.  [Citation.]  The Legislature enacted section 1473.7 to create a mechanism for such defendants to obtain relief." (*Carrillo*, *supra*, at p. 12.)

"The versions of section 1473.7, subdivision (a)(1) in effect from January 1, 2019, through December 31, 2021, stated a person no longer in criminal custody could file a motion to vacate a conviction or sentence for the following reason:  'The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a *plea of guilty or nolo contendere*.'  [Citation.]

"In 2021, the Legislature amended the statute by replacing the phrase 'plea of guilty or nolo contendere' with the broader phrase 'conviction or sentence.'  [Citation.] The amendment 'expand[ed] the category of persons able to seek to vacate a conviction or sentence as legally invalid, whatever way that person was convicted or sentence[d],

9

including a person who was found guilty after a trial.' [Citations.] The amendment became effective on January 1, 2022." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 13.)[4]

"To establish that a conviction or sentence is legally invalid, a 'defendant must first show that he did not meaningfully understand the immigration consequences of his [conviction or sentence]. Next, the defendant must show that his misunderstanding constituted prejudicial error.'" (*Carrillo*, *supra*, 101 Cal.App.5th at p. 14.)

In *Vivar*, our Supreme Court stated that, under the former version of section 1473.7 that applied to only pleas, prejudicial error meant "demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) In *Carrillo*, the Court of Appeal addressed what constitutes prejudicial error under the current, expanded version of section 1473.7. It held that "a defendant who decides to go to trial, loses, and is sentenced can establish prejudice for purposes of section 1473.7, subdivision (a)(1) by showing there is a reasonable probability that (1) he or she would have done something differently—that is, would have taken another 'path'

---

[4] In its current form, section 1473.7, subdivision (a)(1) reads: "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons: [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

[citation]—and (2) the alternate path would have resulted in an immigration-neutral outcome." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 20.)

"A reasonable probability does not mean more likely than not. [Citation.] Instead, it means merely a reasonable chance, which is more than an abstract possibility. [Citation.] In other words, a reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 19.)

Avena, then, must show three things. First, he must show that he did not meaningfully understand the immigration consequences of his conviction. Second, he must show a reasonable probability that he would not have proceeded to a jury trial had he understood the immigration consequences. Third, he must show a reasonable probability that such a path would have resulted in an immigration-neutral outcome.

We apply independent review on appeal of a denial of a section 1473.7 motion. (*People v. Espinoza* (2023) 14 Cal.5th 311, 319.) Independent review means we give deference to credibility determinations. (*In re George T.* (2004) 33 Cal.4th 620, 634 ["Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review"].) However, if the facts underlying the determinations "derive entirely from written declarations and other documents," no deference is warranted. (*Vivar*, *supra*, 11 Cal.5th at p. 528.)

Avena has shown that he did not meaningfully understand that he was virtually certain to be removed if he were convicted. It is not common knowledge that some convictions for serious state crimes fit the federal definition of an aggravated felony but

11

others do not. Neither Roby nor Kennedy testified that they told Avena his removal following a conviction of an aggravated felony was all but certain. Roby could not remember whether he told Avena that removal was certain or just likely, and Kennedy never discussed immigration consequences with Avena at all. As the United States Supreme Court stated in *Padilla v. Kentucky* (2010) 559 U.S. 356, 369, "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." Any presumption that an attorney "has performed his duty in protecting his client's interest" (*People v. Rucker* (1960) 186 Cal.App.2d 342, 346) is overcome by Avena's sworn and uncontradicted statement that he was never told he would be subject to all but certain removal.

Avena has also shown a reasonable probability that he would not have opted for trial had he been told about the certainty of removal and the availability of an immigration-safe plea offer. The timing is important for this. When Roby represented Avena, there is no reason to believe Avena would have chosen an immigration-neutral plea offer because there was no basis for Roby to make such an offer. However, following *Lynch*, the door to an immigration-neutral plea opened. *Lynch* established that burglary and sexual battery convictions are not federal aggravated felonies and so do not lead to automatic removal. Given Avena's extensive ties to the United States—including a wife and four children who are United States citizens—there is a reasonable chance that

12

Avena would have preferred pursuing such a plea over a trial with virtually certain removal as a potential outcome.[5]

Most importantly, Avena has shown a reasonable probability that both the court and the prosecutor would have agreed to an immigration-neutral plea. The possible post-*Lynch* plea we focus on here is one for burglary and sexual battery with a four-year prison term, the high term for felony sexual battery.[6] "In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.) The trial court, which granted Avena three years of probation, would not likely have rejected a plea with a four-year prison term as inappropriately lenient, and it would likely have accepted it in light of the public interest it is charged with promoting.

Under the prosecutor's testimony here, such a plea would have been acceptable. The prosecutor testified that any plea bargain needed a prison term, sex offender

---

[5] The People cite several cases discussing whether a defendant received ineffective assistance of counsel. Avena need not establish ineffective assistance of counsel to obtain relief under section 1473.7 (§ 1473.7, subd. (a)(1); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1008), and neither party has suggested that either Roby's or Kennedy's actions constituted ineffective assistance.

[6] Sexual battery is not a "crime of violence" under the elements clause and thus, after *Lynch*, a conviction of sexual battery would not have led to mandatory removal. (*Lisbey v. Gonzales*, *supra*, 420 F.3d at p. 932 [sexual battery "has no requirement of actual or threatened physical force and is therefore not a 'crime of violence' within the meaning of" the elements clause].)

registration, and a "strike." As noted earlier, any term for felony sexual battery must be served in state prison (§ 243.4, subd. (a)) and requires sex offender registration (§ 290, subd. (c)(1)). The "strike" element would have been satisfied by the guilty plea to burglary. (§ 1192.7, subd. (c)(18).) A plea bargain including burglary and sexual battery, then, would have satisfied all the prosecutor's requirements. A four-year sentence would also have meant Avena spent as much time in prison as under the prosecutor's original plea offer, which also included a four-year prison term. Significantly, the prosecutor did not state that a plea needed to include any immigration consequences. Indeed, if a plea offer of burglary and sexual battery had been made in 2016, the prosecutor would have had to account for its immigration-safe feature, as the Legislature has since 2016 required the prosecution to consider the avoidance of adverse immigration consequences as a factor in reaching a just resolution of a case. (§ 1016.3, subd. (b).) The prosecutor thus offered no reason Avena would have rejected a plea on burglary and sexual battery. Although this alone does not establish the prosecutor was more likely than not to have accepted such a plea bargain, it means that there was a reasonable chance for such an outcome, which is all section 1473.7, subdivision (a)(1) requires. Indeed, in *People v. Espinoza*, *supra*, 14 Cal.5th at p. 318, the defendant had pled no contest to conspiracy, felony child abuse, controlling property to manufacture methamphetamine, and cocaine possession. Based on his lack of other criminal history and an immigration attorney's declaration identifying possible immigration-safe alternatives, our Supreme Court found that "he had reason to expect or hope for a

14

different plea agreement without immigration consequences." (*Id*. at p. 325.) The testimony here about the *prosecution's* requirements for a plea is at least as convincing.

The trial court and the People put forth several arguments for why the motion should have been denied. However, we find each of them unconvincing.

The trial court based its denial partly on its conclusion that section 1473.7 does not apply to cases that were already final at the time the relief under the motion is sought.[7] The trial court cited to and relied on *In re Estrada* (1965) 63 Cal.2d 740, which held that new, ameliorative laws are presumed to apply to cases charged before the law's enactment but not yet final. (*Id.* at p. 745.) However, the trial court was incorrect, as ameliorative laws can apply to final cases. The Legislature has enacted provisions "ameliorat[ing] punishment in connection with judgments that were clearly final at the time the provisions were enacted." (*People v. Esquivel* (2021) 11 Cal.5th 671, 677.) For instance, in *People v. Conley* (2016) 63 Cal.4th 646, our Supreme Court held that a provision that applied to "all persons 'presently serving' indeterminate life terms" under prior law was not limited to nonfinal cases, in part because the provision drew "no distinction between persons serving final sentences and those serving nonfinal sentences." (*Id.* at p. 657.) Here, that rationale applies with greater force, as only a defendant "who is no longer in criminal custody" can seek relief under section 1473.7. (§ 1473.7, subd. (a).) The requirement that one no longer be in criminal custody means

---

[7] Notably, the People do not defend this portion of the trial court's ruling on appeal, though they state that they do not concede it was wrong.

most (and perhaps the vast majority) of those seeking relief under the provision will have already completed serving final sentences, as a sentence is final when the direct appeal is completed. Because we do not believe that the Legislature intended relief under section 1473.7, subdivision (a)(1) to apply only to the limited set of defendants who are no longer in criminal custody but whose case is still not final, we find that the trial court erred in finding Avena precluded from relief under the provision as a matter of law.

The trial court also denied the motion because it found that Avena did not satisfy the substantive elements, and for the reasons discussed above, we disagree. The trial court's finding that Roby's testimony was credible—which we defer to on appeal—does not compel the conclusion that Roby told Avena he was certain to be removed if he were convicted, as Roby testified he could not remember. Also, we need not defer to the trial court's implied credibility finding on Avena because Avena did not personally testify at the hearing. (*Vivar*, *supra*, 11 Cal.5th at p. 528 ["as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding"].)

The trial court's finding that Avena would not have accepted an immigration-safe plea relied only on the fact that, at the time of the proceedings, Avena had asserted his innocence. This caused the trial court to reject Avena's testimony in his declaration that he would have accepted an immigration-safe plea if fully informed about the immigration consequences. The evidence here is too sparse to carry the trial court's conclusion. When a defense lawyer understands that a charge all but guarantees removal but an

16

available plea does not, it enables the lawyer to confront his client with the stark and weighty consequences in a way that can shake the client's initial desire to go to trial. Counsel can suggest a no contest plea, through which the defendant need not admit guilt. (See § 1016; *People v. West* (1970) 3 Cal.3d 595; see also *People v. Palmer* (2013) 58 Cal.4th 110, 118-119 [trial court can ensure that a plea is entered voluntarily and intelligently based on counsel's stipulation that a factual basis exists for the plea, where the defendant states that he has discussed the crime and any defenses with counsel and is satisfied with counsel's advice].) Here, not only did Kennedy not try to lay out the stakes for Avena, but he stated that he had "promised" Avena he would *not* try to persuade him to plead guilty.

Some defendants may be too obstinate to plead guilty even when the proof is sufficient for conviction. But the conclusion that Avena would have been unwilling to do so had he understood the true consequences cannot rest solely on the evidence here. Avena asserted in his declaration that he would not have risked separation from his family had an immigration-safe alternative been available. (See *People v. Espinoza*, *supra*, 14 Cal.5th at p. 322 ["defendant's declaration is one form of objective evidence relevant to a prejudicial error inquiry"].) His deep ties to the United States at the time of his plea—including 16 or 17 years of residency, marriage to a United States citizen, and four U.S.-born children—"can support an inference that immigration consequences were of paramount concern" at the time of the plea. (*Id.* at p. 323.) For defendants with deep roots in the United States, the value of a "different, immigration-safe" plea (*id*. at p. 325)

17

may be significant enough that understanding its availability could lead to a different decision. The United States Supreme Court recognized this in *Lee v. United States* (2017) 582 U.S. 357. There, where there was no immigration-safe alternative, the Court held that a defendant demonstrated a reasonable possibility that, had he understood the mandatory immigration consequences of a conviction, he would have rejected a plea and proceeded to trial despite being "without any viable defense" and "highly likely to lose." (*Id*. at p. 367.) The government argued it would have been irrational for the defendant to seek a trial that would lead to more prison time followed by mandatory deportation (*id*. at p. 370), but the Court held that the value of avoiding deportation meant that even a long-shot attempt at acquittal could be a rational choice where conviction would result in deportation either way. (*Id*. at p. 371.) Here, Avena's position is even easier to accept because it would have been entirely rational for him to pursue an immigration-safe plea had he been fully informed.

The People argue that we should nevertheless find Avena's declaration to be not credible. They first note that "multiple references in the probation report to [Avena's] immigration status" and "immigration-related probation terms" contradict Avena's assertion that he never knew that his conviction would cause adverse immigration consequences. But whatever a probation report might contain regarding immigration consequences, it would at most suggest that a defendant has learned of those consequences before sentencing, not prior to trial. (§ 1203, subd. (b)(1) [probation report is prepared "if a person is convicted of a felony and is eligible for probation"].) What

18

Avena knew after being convicted about immigration consequences is irrelevant to the present analysis, as by that point Avena would have had no ability to avoid a trial. The People then argue that Avena's statement he never knew about immigration consequences is not credible because it is self-serving and because Avena was convicted of a felony. (See *In re Alvernaz*, *supra*, 2 Cal.4th at p. 945; Evid. Code, § 788.) These factors weigh against credibility, but they are outweighed here by the corroborating testimony of both his trial lawyers, neither of whom stated they told Avena he was certain to be removed.[8]

The People's other arguments fare no better. They contend that there is no evidence that they would have accepted an immigration-safe plea deal partly because the prosecution has no federal constitutional obligation to offer a plea bargain at all. (See *Weatherford v. Bursey* (1977) 429 U.S. 545, 561 ["there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial"].) This ignores that the

---

[8] Although we find Avena's statement that he was never informed about certain removal to be credible, we note that, because of the unique facts of this case, we would find Avena has satisfied section 1473.7's requirements *even if* Roby had told him removal was certain. Here, no immigration-safe plea existed when Roby represented Avena, but it did after *Lynch*, when Kennedy was representing Avena. Kennedy did not explore or even recognize an immigration-safe plea made possible by that case. A defendant demonstrates entitlement to relief if prejudicial error prevented his or her ability to "defend against" adverse immigration consequences. (§ 1473.7, subd. (a)(1).) Even assuming that Roby told Avena that he was certain to be removed, that would not have given Avena reason to avoid trial because no immigration-safe plea then existed. Such an error would not have damaged Avena's ability to "meaningfully understand" certain removal under section 1473, subdivision (a)(1), but it would have damaged his ability to "defend against" it by avoiding trial.

prosecutor both actually offered a plea bargain and testified about the requirements that an acceptable plea would have, all of which a plea bargain for burglary and sexual battery would have satisfied.  The People also argue that assault with intent to commit rape is a so-called "super strike," but that is not significant here because the prosecutor never suggested that any plea bargain had to include a guilty plea for a super strike.  (See *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242 [felonies described in section 667, subdivision (e)(2)(C)(iv) "are known as 'super strikes'"]; § 667, subd. (e)(2)(C)(iv)(I).)  And finally, the People's claim that Avena would have been removed even if convicted of sexual battery simply misconstrues the record and the law.  Although they observe that aliens who commit crimes of moral turpitude are removable (8 U.S.C. § 1227(a)(2)(A)(i)) and that sexual battery is a crime of moral turpitude (*Gonzalez-Cervantes v. Holder* (9th Cir. 2013) 709 F.3d 1265, 1270), they fail to mention that an alien must commit a crime of moral turpitude within five or 10 years of entry (depending on whether the alien is a lawful permanent resident) to be removable on that ground (8 U.S.C. § 1227(a)(2)(A)(i)(I)), and Avena entered the United States more than 10 years before committing his conviction offenses.

In sum, we find that Avena is entitled to relief under section 1473.7, and the trial court erred in concluding otherwise.

### III. DISPOSITION

The order denying Avena's motion to vacate his conviction is reversed. The matter is remanded to the superior court with instructions to grant the motion and vacate the conviction.

CERTIFIED FOR PUBLICATION

RAPHAEL_____

J.

We concur:

MILLER_____

Acting P. J.

LEE_____

J.